## A. T. SHED v. THE STATE.

### No. 2289.   Decided March 26, 1913.

### Rehearing denied April 16, 1913.

**1.—Occupation—Patent Medicine—License—Interstate Commerce—Constitutional Law.**

Where, upon trial of pursuing the occupation of selling patent and other medicines without license, the evidence showed that the defendant resided in this State, was engaged in peddling and pursuing an occupation entirely within this State and that by an agreement, the goods were consigned to him as agent, from another State, and he made his profit by commission from the sale of said goods, he could not claim protection under the interstate commerce clause of the Federal Constitution.   Following Saulsbury v. State, 43 Texas Crim. Rep., 90.

**2.—Same—No Discrimination—Residents—Non-Residents.**

Where the law does not discriminate between residents and non-residents in taxing a certain occupation, wholly carried on within the State, the same is constitutional.   Following Emert v. State of Missouri, 156 U. S., 296, and other cases.

**3.—Same—Tax Levy—Evidence—Time of Levy—Evidence.**

Where the Commissioners Court levied a tax at a time fixed by law, the same covered the entire year; besides, the tax levied covered the period in which defendant pursued the occupation, and there was no error in admitting the orders of the Commissioners Court levying the tax.

**4.—Same—Evidence—Individual Sales.**

Upon trial of pursuing the occupation of selling certain goods without license, there was no error in admitting evidence of individual sales.

**5.—Same—Information—Precedent.**

Where, upon trial of pursuing an occupation without license, the information conformed to approved precedent, there was no error in overruling a motion to quash.

**6.—Same—Charge of Court.**

Where the evidence amply supported the verdict, there was no error in the court's refusal to submit a peremptory charge to acquit.

**7.—Same—Charge of Court—Occupation.**

Where the court's definition of occupation conformed to approved precedent, there was no error.   Following Cohen v. State, 53 Texas Crim. Rep., 422.

**8.—Same—Verdict—Judgment.**

Where but one offense was submitted to the jury and the verdict was sufficiently definite to support the judgment, there was no error.   Following Steinberger v. State, 34 S. W. Rep., 617.

**9.—Same—Agent—Charge of Court.**

Upon trial of selling patent medicines without license, there was no error in the court's refusal to charge the jury that, if defendant was an agent, to acquit him.

Appeal from the County Court of Coryell.   Tried below before the Hon. G. E. Johnson.

Appeal from a conviction of unlawfully pursuing an occupation without license; penalty, a fine of $150.

The opinion states the case.

*T. M. Mears* and *Clay McClellan,* for appellant.—On court's failure to charge the jury to acquit defendant: Miller v. Goodman, 40 S. W. Rep., 718.

On question of unlawful levy of tax: Witherspoon v. State, 44 S. W. Rep., 1096; Barnes v. State, 72 S. W. Rep., 177.

On question of occupation: Cohen v. State, 53 Texas Crim. Rep., 422, 110 S. W. Rep., 66.

On question of single sales: Stanford v. State, 16 Texas Crim. App., 331; Halfin v. State, 18 id., 410; Merrit v. State, 19 id., 435; McReynolds v. State, 26 id., 372.

On question of ex post facto law in connection with tax levy: Calloway v. State, 7 Texas Crim. App., 585; Simco v. State, 8 id., 406; Baker v. State, 11 id., 262; Ex Parte Hunt, 28 id., 361.

*C. E. Lane,* Assistant Attorney-General, and *H. E. Bell,* County Attorney, for the State.—On question of verdict: McConnell v. State, 3 S. W. Rep., 690, and cases cited in opinion.

On question of tax levy: Petteway v. State, 35 S. W. Rep., 646; Russell v. State, 53 Texas Crim. Rep., 500, 111 S. W. Rep., 658.

On question of information: Jordan v. State, 39 S. W. Rep., 110; Hammons v. State, 16 S. W. Rep., 99; Reum v. State, 49 Texas Crim. Rep., 125, 90 S. W. Rep., 1109.

On question of occupation: Saulsbury v. State, 43 Texas Crim. Rep., 90; Robbins v. State, 57 Texas Crim. Rep., 462, 123 S. W. Rep., 695, and cases cited in opinion.

HARPER, JUDGE.—Appellant was convicted of the offense of being a traveling person pursuing the occupation of selling patent and other medicines.

The evidence unquestionably shows that appellant had a two-horse hack on which was painted, "Watkins Remedies"; that he traversed Coryell County, selling these remedies and Watkins spices, etc.; that this was his regular occupation. Appellant himself testified and stated:

"My name is A. T. Shed. I am the defendant in this case. I understand what I am being tried for. I am principally engaged in selling extracts, spices, flavorings, soaps, perfumes, and other toilet articles. I am in the employment of J. R. Watkins Medical Co., Winona, Minnesota, U. S. A. I have a contract with Watkins Co. to advertise, take orders, and sell their goods. Watkins is the manufacturer of his own goods and the goods that I am handling. They are manufactured in Winona, Minnesota. In addition to my selling and advertising the Watkins line of goods, I am the general collector for Watkins in this county. The goods that I handle are shipped to me direct from Watkins' manufacture. The title to the goods are in Watkins until they are sold to the consumer. If I sell the goods on credit, I have a book furnished me by Watkins, the title of the book being in Watkins. I place the order and account upon this book. The order and account

belong to Watkins until I collect same. Then I remit the money to Watkins Manufacturing Company, Winona, Minnesota, retaining my commission. If I get an order for any kind of goods that I have not got with me, I send this order in to Watkins Manufacturing Company, Winona, Minnesota. They fill the order and return it to me and I deliver it to the party who ordered it. I travel in a two-horse hack or wagon. The wagon has printed on the side 'Watkins' Remedies,' also has printed across the back end of the wagon 'Watkins' Remedies.' I have a leather case furnished me by Watkins Manufacturing Company that I carry these goods around in. I carry some of all the kinds of goods that I am selling, advertising, and taking orders for in this case. There are little places fixed in this case in which to place the articles. I drive up to a customer's house, get out of the wagon, take this case in, show them some goods, and ask them if there is anything that they want today in the Watkins' line. In this case I have some of Watkins' liniment and cough syrup, also some poultry food. Each and every article that I handle is placed with the customer on trial and under a guarantee. Each and every bottle of Watkins' liniment and cough syrup have stamped upon the bottle about two inches from the mouth of the bottle 'Trial Mark.' Length ways of the bottle is stamped on the bottle in large letters 'Watkins,' making the same read 'Watkins' Trial Mark.' The customers are allowed to use Watkins' remedies down to this trial mark and if it is not satisfactory, it is returned to me and I return it to Watkins Manufacturing Company at Winona, Minnesota. When this liniment is placed on trial, I never know whether the customer will take it till he has used it down to the trial mark. I usually find out the next time that I go around some time about two months. If I place any of the goods and receive the cash for it at the time it is placed, it is left on the same condition, and if any of his remedies have not given satisfaction, the next time I go around, I take them up and return them to Watkins. Their money is refunded. Watkins does not sell his goods to druggists or other people engaged in the mercantile business. They go from the manufacturer direct to the customer through Watkins' agents. The case that I carry my goods to the houses of the people in is the property of Watkins Manufacturing Company, Winona, Minnesota, and has printed on the side of it 'Watkins' Manufacturing Co.' I usually have more goods than I carry in the case. These goods I keep in my wagon, but all are of the same line and character that are represented in the case. I don't suppose that I put in more than one-twentieth of my time talking or trying to advertise or place the liniment or cough syrup, the balance of my time is put in on the extracts, spices, soaps, and other toilet articles, for those are much easier to place than the other articles. None of the Watkins' goods that are handled by me in this way are taken out of their original packages. We are not allowed to take any of it out of the original packages and dispose of it. Each and every bottle has stamped upon it its price, fixed by Watkins Manufacturing Company, and I am not allowed to

change or alter it in any way. The goods while I am hauling them around and placing them with the people are under the control of Watkins, and I myself am under his control and employment, and any disregard of his instructions and orders that I am under on my part would mean my discharge. I never take back any of the medicine that has been tried by any one with whom it has been placed and who has opened the original package, and try to place it with any one else but return it in all cases like this to Watkins Manufacturing Company. I advertise Watkins' liniment and cough syrup and Watkins make it a kind of a leader, but there is not the demand for these as for the other articles, consequently I devote the principal part of my time with the extracts, spices, soaps and other toilet articles. Watkins Manufacturing Company has no place of business in this State, neither has it any warehouse. The goods are shipped to me direct from Watkins Manufacturing Company, direct from Minnesota to Gatesville. I go to the depot and get the goods, carry them to my house and there put them in this case and my wagon, and from there they go direct to the consumer. I scatter some literature for Watkins in making these rounds. I never know at the time that any of these goods are placed on trial whether or not it is a sale. I am not following the occupation of a travelinng person selling patent and other medicines.

(Cross examination of the witness, A. T. Shed.) "I sell medicines, but I sell only conditionally. I spend more time talking up soaps, spices, etc., but at the same time I talk up the medicines, too, and offer them for sale in the way I have told you. The vehicle in which I travel belongs to me and has painted on the side of it 'Watkins Medical Co., Winona, Minnesota.' The team I drive also belongs to me. I sell only conditionally, but I nearly always display my samples of medicines and offer these medicines for sale at the same time that I offer the soaps, spices, etc. I do not go around taking orders at all. In collecting for the medicines I sell on a credit. I present the bill and take the money and do not ask them if they had decided to take the medicine. As well as trying to sell the medicines as stated above, I also tried to sell them between August 19, 1912, and August 27, 1912, in Coryell County, Texas, between Gatesville and Oglesby, along the road and also between Copperas Cove and Gatesville. During this time I am satisfied I left medicines at various places. I not only carry with me on my trips the liniment, liver medicine and female remedies, and the other Watkins' medicines in the case which I display them to prospective purchasers, but I also carry an extra lot in my vehicle, and either from the case or from the vehicle make delivery of the medicine sold at the time that the sale is made. When I stated in my direct testimony that I sold unbroken packages, I did not mean that I sold the entire boxes of medicine as they were shipped to me from the company. The truth is the medicine comes in large boxes. I receive these boxes at the depot. I open these boxes and take the bottles of medicine out of them and offer

the medicine for sale and sell them by the bottle. When I said that I sold in unbroken packages, I meant that I did not open these small bottles and sell by the spoonful out of these bottles. The prices of these medicines range from 25 cents to $1 per bottle. I have customers nearly in all parts of Coryell County who have been buying the Watkins' medicines for a long time. I sell them to customers at Copperas Cove, Pidcoke, Jonesboro, Turnersville, Coryell City, Osage, Oglesby, Mound and Pecan Grove. These customers after having used some of Watkins' medicine later buy the same medicine from me, saying at the time that they know the medicine is all right, although I tell my customers that I will take the medicine back if they are not satisfied with it. I take their money for it at the time of the sale if they offer it to me, as they frequently do, and if they do not offer me the money, I charge it to them on my book and later come around and collect for same unless they say that they are not satisfied with the medicine and return it to me. My license ran out December 21, 1911, and I have not taken out license since, but have continued to sell these medicines down to August 27, 1912."

Appellant's first and main contention in the case is that he is engaged in interstate commerce and therefore not liable for the tax; that no State can levy a tax on interstate commerce, and any Act of the Legislature attempting to do so is unconstitutional and void. The evidence discloses that the goods are not shipped direct to the consumers, but is boxed and shipped in bulk to appellant, an agent of the medicine. That he receives these goods in bulk from the railroad; deposits them at his residence or warehouse, opens the boxes, and takes therefrom the several articles of merchandise he desires to take with him on each trip, and that he then sells these goods to anyone who desires to purchase. The question arises, can a foreign corporation employ an agent residing in this State to receive its goods in bulk, unpack and display them in a wagon, hack or house and engage in a retail sale thereof, and such business be exempt from the laws of a State licensing and taxing such character of business? The law in this case applies to all alike, and there is not any discrimination by reason of place of manufacture or ownership, but anyone who engages in going from place to place engaging in the business of selling patent and other medicines by retail in this State is required to take out a license so to do and pay the tax levied on that character of business.

Every question raised by appellant as to the unconstitutionality of the Act and its interference with interstate commerce is so thoroughly discussed in the case of Saulsbury v. State, 43 Texas Crim. Rep., 90, we do not deem it necessary nor proper to do so again. The appellant resided in this State, was engaged in peddling and pursuing an occupation entirely within this State, and the fact that instead of buying and reselling the goods, he perfected an arrangement whereby the goods were consigned to him as agent, and he made his profit by commissions

on the sale of the goods thus consigned to and received by him, does
not bring such business within the protection of the interstate com-
merce clause of the Federal Constitution.    In so far as appellant is
concerned he had established and was carrying on a certain line of
business wholly within the State, and such a class of business and occu-
pation can be regulated by the State, for the great weight of authority
supports the right to tax peddlers where the law does not discriminate
between products of residents and non-residents.    Emert v. State,
of Missouri, 156 U. S., 296; Parsons v. Missouri, 166 U. S., 718;
Preston v. Fenley, 72 Fed. Rep., 850; In re May, 82 Fed. Rep., 422;
State v. Wheelock, 30 L. R. A., 429, and cases there cited.    This latter
case is one in which the Watkins Company's remedies were being sold
by a resident peddler under the same conditions as in this case in Iowa,
and the peddler was adjudged liable for the tax imposed.

This disposes of the principal contention of appellant in this case, but
there are other questions raised which perhaps should be decided.    The
county did not levy the occupation tax until at the August term of the
Commissioners Court, but did levy this tax both in 1911 and 1912.
We think when the court levied the tax at a time fixed by law, the tax
covered a period from January 1st to December 31st of that year, for it
is levied for that period of time.    But if mistaken in this, the tax levied
during the two years would certainly cover the period in which appellant
pursued the occupation, and the court properly permitted these orders
to be introduced in evidence.

Appellant was being prosecuted for pursuing a given occupation—
that of peddling patent and other medicines, and each sale would have
a tendency to prove that he was so engaged, and the court did not err
in permitting evidence to be adduced of individual sales.

The complaint and information in this case are drawn in terms fre-
quently approved by this court, and the court did not err in refusing
to quash same.

The evidence amply supports the verdict, and the court did not err
in refusing to give the peremptory instructions requested.    The court
defined occupation thus:  "By occupation, as used in this charge, is
meant a calling, trade or vocation which one engages in for the purpose
of profit, or making a living, or obtaining wealth."    In the Cohen case,
53 Texas Crim. Rep., 422, 110 S. W. Rep., 66, Judge Ramsey reviews
this question at length, and says that a charge in the language used in
this case is sufficient.    Therefore, it was unnecessary to give the special
charge requested in regard to this matter.    The verdict is sufficiently
definite to support the judgment.    But one offense was submitted to the
jury.    Steinberger v. State, 34 S. W. Rep., 617.

There was no error in refusing the special charges requesting the court
to instruct the jury that as appellant was agent of the medicine com-
pany he would not be liable to the tax for the reasons hereinbefore
stated.    The other questions raised by the motion for new trial need

not be referred to as they have all been held adversely to appellant's contention.

The judgment is affirmed.

'Affirmed.

[Rehearing denied April 16, 1913.—Reporter.]