### W. F. Collins v. The State.

No. 3904.    Decided January 12, 1916.

1.—Occupation—Peddling Patent Medicines, etc.—Occupation Tax—Informations.

Where, upon trial of pursuing the occupation of peddling medicines without paying the occupation tax provided in subdivision 2 of article 7355, Revised Civil Statutes, the information strictly followed the statutes, except in negativing the proviso as to traveling salesmen for merchants selling drugs by wholesale, where the information used other words than the statute having the same meaning, the information was sufficient.

**2.—Same—Sufficiency of the Evidence—Peddler.**

Where, upon trial of pursuing the occupation of peddling medicines without paying the occupation tax prescribed by law, the evidence showed that the defendant ordered said medicines from a company in the State of Illinois, paying wholesale prices therefor, and after being received by him in this State, peddled them out and sold them by retail, without paying the occupation tax, the evidence sustained the conviction, under subdivision 2 of article 7355 of the Revised Civil Statutes, and article 130, Penal Code.

**3.—Same—Former Decisions—Precedent.**

Where this court has passed adversely upon the questions raised by appellant in attacking the law and convictions thereunder, it is unnecessary to again discuss the law or any questions raised thereunder in this case. Following Shed v. State, 70 Texas Crim. Rep., 10, and other cases.

Appeal from the County Court of Callahan. Tried below before the Hon. W. R. Fly.

Appeal from a conviction of unlawfully pursuing the occupation of peddling medicines without license, and paying the occupation tax therein; penalty, a fine of $150.

The opinion states the case.

*F. S. Bell* and *J. Rupert Jackson,* for appellant.—Cited Watkins Medical Co. v. Johnson et al., 162 S. W. Rep., 394; Erwin v. L. I. Dupoint DeNormans Powder Co. et al., 156 S. W. Rep., 1097; Rock Vegetable Tea Co. v. Malone, 162 S. W. Rep., 662; Kirkpatrick v. State, 60 S. W. Rep., 762.

*C. C. McDonald,* Assistant Attorney General, for the State.—Cited Needham v. State, 51 Texas Crim. Rep., 248, and cases cited in opinion.

PRENDERGAST, PRESIDING JUDGE.—Appellant was convicted for pursuing the occupation of peddling medicines without paying the occupation tax prescribed by law.

The information strictly follows the statute and alleges properly everything necessary as a proper pleading unless it be what we will now state.

Our statute (art. 7355, Rev. Civ. Stats.) enacts that there shall be levied on, and collected from, every traveling person selling patent and other medicines $100 occupation tax annually to the State, and that no traveling person shall so sell until said tax is paid. Our statutes further authorize the Commissioners Court to levy one-half of such amount for the State in favor of the respective counties. Subdivision 2 of said article 7355 adds as a proviso, "that this tax shall not apply to commercial travelers, drummers or salesmen making sales or soliciting trade for merchants engaged in the sale of drugs or medicine by wholesale." The information negatives this proviso in this allegation: the said Collins "not then and there being a commercial traveler or salesman making sales or soliciting trade for merchants selling drugs or other medicines by wholesale." It will be noted that the proviso is,

that the tax shall not apply to commercial travelers, etc., in making sales or soliciting trade for "merchants engaged in the sale of drugs, etc., by wholesale." The allegation does not use this identical language, but instead negatives the proviso as such commercial traveler, etc., for "merchants selling drugs by wholesale." In other words, the statute is, *engaged in the sale,* and the allegation is *selling,* etc.

Our statute (art. 474, C. C. P.) prescribes that words used in the statute to define an offense need not be strictly pursued in the indictment or information; it is sufficient to use other words having the same meaning, or which include the sense of the statutory words. The allegation negativing the proviso clearly does so, and, if anything, is broader in appellant's behalf than the words of the statute itself. Clearly the information was sufficient. (Arts. 453 and 460, C. C. P.)

Our statute (art. 130, P. C.) makes it an offense for any person to pursue or follow any occupation, etc., or do any act taxed by law without first obtaining a license therefor, and fixes the penalty at a fine of not less than the amount of the tax and not more than double the same.

Appellant waived a jury and submitted the case to the trial judge, who found him guilty and assessed his fine at $150.

It was admitted by both sides that the county tax for said county had been duly levied by the Commissioners Court, and that it was one-half of the State tax. We will give the balance of the statement of facts in full:

"It is agreed by the State and defendant that the following is, in substance, a part of the contract which was introduced in this case and under which said defendant, Collins, was working April 15, 1914:

"(2) That for and in consideration of the promises and agreements hereinafter contained, to be kept and performed by the parties hereto, the company, unless prevented by fires, strikes, accidents or other causes, beyond its control, agrees to sell and deliver to the second party f. o. b. cars at Freeport, Ill., or at its option at any other regular place of shipment, in such reasonable quantities only as the second party may from time to time desire to purchase, all medicines, extracts and other products manufactured or sold by it, such goods to be sold and delivered to the second party at the usual customary wholesale prices, such prices to be shown by invoice of each shipment. And said second party agrees to purchase such goods on the above prescribed terms and conditions; but the company may at any time suspend such sales and shipment if said party fails to make the payments as hereinafter provided, or for any other omission or neglect by said second party.

"(3) The company will at its option also sell second party for cash or partly or wholly on credit, a medicine wagon, such as said second party may choose from current catalogues, circulars or other descriptions, and charge said wagon to his account at its customary cash price or part cash and part credit price.

"(4) The company further agrees to purchase from said second party at any time during the term of or promptly after the termination or expiration of this contract, and at the wholesale list prices then

current, such medicines, extracts and other products of its manufacture. as second party may have on hand, and unsold; provided, that these products are in as good and salable condition when received by the company as when purchased by said second party; and pay or credit second party therefor on the return of such products promptly by prepaid freight to Freeport, Ill., or such other shipping point as may be designated by the company, in writing, and provided that second party shall pay the company its actual expense of receiving, inspecting and overhauling such goods.

"(5) The second party agrees and promises to pay to the company at its wholesale list prices, f. o. b. cars, at Freeport, Ill., or at any other regular place of shipment as aforesaid, for all medicines, extracts and other products sold to him from time to time, including any balance due from him on wagon as hereinbefore provided, by ample cash weekly payments until this account shall be fully paid, and that upon the termination of this contract for any cause whatsoever, or by its expiration by limitation as hereinafter provided, second party promises and agrees to pay in cash the balance due said company for all medicines, extracts, other products and wagon sold and delivered to him as hereinbefore provided, but the time of making such payments or any or all of them may be extended by said company without notice of the guarantors of this agreement, and without prejudice to any of the interest or rights of said company."

Appellant testified: "I am the defendant herein. I live in Callahan County and do business in said county for W. T. Rawleigh & Co., which is a wholesale establishment and is in Freeport, Ill. I order the goods that I sell at wholesale prices from this company and said goods are delivered to me at wholesale prices at the depot in Baird, Callahan County, Texas, and I pay the freight on them. I take and open these goods and sell them out at retail prices. I take them around in my wagon in this county and sell and deliver them to the purchaser. I sell these goods on three months trial if they desire such time, and if they desire to pay cash I accept it. If, after the three months the goods are satisfactory to the purchaser, they then pay for them, and if they are not satisfactory I am to return these goods to this company. The wholesale price at which I purchase these goods is remitted to this company by me. When any of these goods are left over I always send them back to this company. These goods are not mine until paid for. This company has no office in Texas and never had any office in Texas. I was engaged in this work on the 15th day of April, 1914, in Callahan County, Texas, and also prior to the 15th day of April, 1914, and I had not at that time paid any occupation tax either the State of Texas or the County of Callahan. I am employed by this company to sell these goods and I am its agent."

We have so often and thoroughly considered in former opinions this offense and the questions raised by appellant's attacking the law and convictions thereunder, that we think it wholly unnecessary to again

discuss the law or any questions raised thereunder in this case. We will, therefore, merely cite some of the cases. They are entirely on all-fours with all questions raised in this case and uniformly hold against appellant and all his contentions. Shed v. State, 70 Texas Crim. Rep., 10; South v. State, 72 Texas Crim. Rep., 381; Saulsburry v. State, 43 Texas Crim. Rep., 90; Camp v. State, 61 Texas Crim. Rep., 229.

The judgment is affirmed.

*Affirmed.*