No. 38,508

ADAH GRIEM CHAMBERS, *Appellee,* v. ARTHUR A. HERRICK, State Director of Alcoholic Beverage Control, *Appellant.*

(241 P. 2d 748)

Opinion filed March 8, 1952.

*Clay C. Carper*, of Topeka, argued the cause and was on the briefs for the appellant.

*W. D. Jochems*, of Wichita, argued the cause, and *T. A. Sullivan* and *R. E. Angle*, both of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PRICE, J.: This is an appeal by the Director of Alcoholic Beverage Control from a judgment of the district court reversing and setting aside an order of the Director revoking a retail license, and from other rulings made by the court in connection with the judgment.

On August 30, 1949, appellee (hereinafter referred to as the licensee) was issued a retail liquor license for the premises located at 219 East Murdock Street in the City of Wichita. The license was renewed on August 30, 1950, for the term of one year.

On October 11, 1950, the licensee was cited to appear before the Director for the alleged violation of certain provisions of the Kansas Liquor Control Act and certain rules and regulations promulgated by the Director.

The evidence at the hearing before the Director established the following:

The licensee became ill in April, 1950, and was taken to the hospital where she was confined until the latter part of July of that year. During this period her husband was in complete charge of and operated and managed her retail liquor store. She gave him authority to make purchases of and to sell alcoholic liquors, and in general to do all things necessary for the conduct of the business. His authority existed during the month of September inasmuch as she was still under medical care and confined to her home for six or eight weeks following her release from the hospital. She was at home on Sunday afternoon, September 3d, and on that occasion she and her husband entertained friends of the latter by the name of Barnett. In view of our decision in this case we consider it unnecessary to detail the testimony concerning her knowledge as to the identity of the Barnetts or the purpose of their being at the residence of licensee. It should be stated, however, that she denied any knowledge of wrongdoing on the part of her husband on that particular occasion, or at any time prior thereto, concerning any violation of law or rules and regulations pertaining to the operation of her retail liquor store.

One Winters, an investigator working out of the Director's office, testified that on September 1, 1950, he, in company with three alcohol tax agents, observed several cases of alcoholic liquor being loaded into an Oklahoma automobile at the liquor store, and that during the ensuing conversation between the husband of licensee and the officers the former admitted that he had sold the driver of the Oklahoma car fourteen cases of alcoholic liquor.

One Rennolds, a special investigator of the Federal Alcohol Tax Unit, testified that on September 1st he saw Barnett (above referred to), an alleged Oklahoma bootlegger, drive to the alley in the rear of the store and observed licensee's husband and Barnett loading cases of whiskey into the latter's car; that he later stopped the car and, in company with two other officers, found that it contained seven cases of whiskey.

He further testified that on Sunday, September 3d, he saw the husband of licensee talking to Barnett at a named location in the city of Wichita and followed them to the residence of licensee and her husband, at which place the husband and Barnett each drove his car into the double garage, following which they both went into the residence by the back way. That he observed what appeared to be whiskey cases transferred from the husband's car to the Barnett car; that later, at the corner of Lincoln and Broadway, in Wichita, he stopped the Barnett car and discovered that it contained five cases of alcoholic liquor, identified by brand names. The serial numbers on the cases had been removed. Later, in the presence of this witness, the husband admitted that he had sold Barnett sixteen cases of whiskey.

The evidence discloses that none of the alleged alcoholic liquor so sold and delivered was seized by the officers or introduced in evidence, and neither is there any direct evidence that the licensee knew of the sales, transfers or deliveries in question.

The Director found that the licensee had violated section 24 of the Act (G. S. 1949, 41-308), which prohibits the sale and delivery of alcoholic liquor by a retail licensee from any premises other than those specified in the license, and prohibits the sale and delivery of alcoholic liquor by such retail licensee for resale in any form; that the licensee had violated section 75 of the Act (G. S. 1949, 41-712), which prohibits the retail sale of alcoholic liquor on Sunday; and that she had violated Rule 14-3-8 of the rules and regulations promulgated by the Director, which prohibits a retail licensee from

engaging, directly or indirectly, in any conspiracy, transaction or agreement having as its object the sale or resale away from or off the licensed premises, and the sale or delivery of any alcoholic liquor to any person with knowledge, or with reasonable cause to believe, that the purchaser is acquiring the same for the purpose of resale. He further found that the licensee had violated Rules 14-3-6 and 14-3-7, but as they are not set out in the abstract or briefs such finding cannot be considered.

Pursuant to the above findings the license was revoked.

The licensee appealed to the State Alcoholic Beverage Control Board of Review. That body, with two of its three members sitting, sustained and approved the findings and order of the Director in revoking the license.

The licensee then appealed to the district court. The transcript of the proceedings before the Director was introduced in evidence (G. S. 1949, 41-323), and it also appears the Director introduced some additional evidence. It does not appear that the licensee introduced any evidence in the district court.

At the conclusion of the hearing in the court below judgment was rendered in favor of the licensee upon all issues, and the journal entry of judgment recites in substance the following findings:

That only two members of the Board of Review were present at the hearing and therefore such hearing was illegal for the reason the statute provides such board shall consist of three members; that Rule 14-2-6 of the rules and regulations promulgated by the Director is contrary to the Act, is unreasonable, arbitrary and capricious, and therefore unconstitutional; that there was no evidence whatever that any alcoholic liquor was sold or delivered off of the licensed premises in that such evidence as was introduced was speculative and insufficient to convince the court that the packages so delivered contained alcoholic liquor; that there was no evidence that any alcoholic liquor was sold or delivered from the residence of the licensee on Sunday, September 3, 1950, in that such evidence was insufficient to convince the court that the packages referred to in the testimony contained alcoholic liquors, and that no competent evidence was introduced showing any violation of the rules and regulations promulgated by the Director.

The judgment then contains a recital setting aside and holding for naught the order of the Director, as approved by the Board

of Review, and orders that the license be reinstated as though no charges had ever been filed against the licensee.

From such findings, orders and judgment the Director has appealed to this court.

Before considering the merits of this appeal we are confronted with the licensee's motion to dismiss it on the ground that as the license under consideration has now, by its own terms, expired, any question concerning it has become moot.

It is true the renewal license in question was for the period of one year and would have expired by its own terms on August 30, 1951, some six months ago. On the other hand, in the event the judgment of the lower court is upheld the license would be subject to renewal under G. S. 1949, 41-327. Under such circumstances we do not think the question has become moot merely because the license expired during the period of time necessarily required for the Director to perfect and present his appeal to this court, and the motion to dismiss the appeal is therefore denied.

There is still another matter which should be disposed of before we discuss the evidence, and that is the ruling of the lower court that the hearing before the Board of Review was illegal in that only two of its three members sat. G. S. 1949, 41-203, creates the Board of Review and provides that it shall consist of three members. The provision is silent on the question whether a majority of the board can legally act. However, we think the answer is to be found in G. S. 1949, 77-201 (*Fourth*), which provides:

"Words giving a joint authority to three or more public officers or other persons shall be construed as giving such authority to a majority of them, unless it be otherwise expressed in the act giving the authority."

The ruling of the lower court on this question was clearly erroneous.

As stated, it appears from the counter abstract that the Director introduced some additional evidence in the lower court. However, such extracts from it as are abstracted neither added to nor detracted from that heard by the Director. It is clear that the court tried this case chiefly on the transcript of the testimony heard by the Director. That being the case, this court is in as good position as the lower court to determine just what that evidence established.

To begin with, and without further discussion, we do not find sufficient evidence in this record to establish that the husband of

licensee sold any alcoholic liquor for the purpose of resale. Neither do we find sufficient evidence to establish that the licensee engaged, directly or indirectly, in any conspiracy, transaction or agreement for the sale or resale of alcoholic liquor away from or off the licensed premises, or that she had knowledge or reasonable cause to believe that any liquor thus sold was being purchased for the purpose of resale.

This leaves, then, the question whether alcoholic liquor was sold and delivered by licensee's husband to Barnett at the residence address, on Sunday, September 3, 1950, prohibited by sections 24 and 75 of the Act, respectively, and, if so, whether licensee herself can be held responsible.

It is strenuously argued there is no direct proof that the cases which were transferred from the car of licensee's husband to Barnett's car contained alcoholic liquor. We will not debate the question, but in view of all the facts and circumstances heretofore related we have no difficulty whatever in concluding that they did. We find, therefore, that the husband of licensee violated the two sections of the Act, by making a sale and delivery from the residence address, and on a Sunday.

This brings us to the real crux of the case—namely, under such a state of facts is the licensee to be held responsible?

The Director contends that she is, under the provisions of Rule 14-2-6 of the rules and regulations promulgated by him, which reads:

"Licensees are at all times responsible for the conduct of their business and are at all times directly responsible for any act or conduct of any employee on the premises, which is in violation of the act or the rules and regulations of the director."

It will be recalled that the lower court held this rule to be contrary to the Act, unreasonable, arbitrary and capricious, and therefore unconstitutional. In support of such ruling the licensee argues that from a reading of the entire Act it is clear the legislature intended that in only one instance is a licensee, without knowledge, responsible for a violation—in the sale of alcoholic liquor to a minor (G. S. 1949, 41-715); and we are also referred to G. S. 1949, 41-904, which in substance provides that every act or omission, of whatever nature, constituting a violation of any of the provisions of the Act, by any officer, director, manager, or other agent or employee of any licensee, shall be deemed and held to be the act of

such licensee, thus subjecting the latter to the penalties provided, if such act or omission is made with the authorization, knowledge or approval of the licensee. By analogy, it is argued the language of Rule 14-2-6 thus amounts to unauthorized "legislation" by the Director and is contrary to the Act itself.

We cannot agree with this contention.

In the first place, it was within the power of the legislature, in an effort to curb the use of alcoholic liquors by minors and all of its attendant evils, to enact the provision which in no uncertain terms places the burden upon the seller to satisfy himself as to the age of a purchaser, but it does not necessarily follow that because the legislature has seen fit to make a sale, either knowingly or unknowingly, to a minor, a violation, that a licensee would thus be relieved of all responsibility for other acts of his employee, even though committed without the knowledge, authorization or approval of the licensee.

And neither do we see any application of section 41-904, *supra*, to the question before us. That section is a general penalty provision of the Act relating to criminal prosecutions. Conceding that under that provision a licensee cannot be fined or imprisoned for a violation committed by one of his agents or employees unless the act or omission constituting such violation was done with his authorization, knowledge or approval, still it does not follow that for the purpose of *suspension or cancellation of licenses* a licensee should not be held responsible at all times for the acts of his employee in the conduct and operation of the business. This was not a criminal prosecution—it was one to revoke a license.

G. S. 1949, 41-209 and 210 provide that the Director shall adopt and promulgate such rules and regulations as shall be necessary to carry out the intent and purposes of the Act. He is clothed with broad discretionary powers to govern every phase of the alcoholic liquor traffic within the state. All valid rules and regulations promulgated by the Director are binding upon all licensees and are enforceable by him through the power of suspension or cancellation of licenses, just as was done here.

In our opinion there is no room for debate on the question whether, *for the purpose of suspension or cancellation of licenses*, the holder of a retail liquor license should be held repsonsible for the acts and conduct of his employee in the operation of the business. Sound public policy requires that he is responsible. To hold

otherwise would lead to a complete breakdown of the whole system and theory of supervision contemplated by the Act, and would permit a licensee to escape liability for suspension or revocation of his license merely on the ground he had no knowledge of and had not authorized or approved a violation by the employee. In an effort to get at this very thing the legislature has seen fit to classify those persons to whom licenses may be granted and who may be employed by licensees. In the nature of things it must be held that the licensee is responsible at all times for the acts and conduct of his employee in the operation of the business. The rule under consideration is not unreasonable, arbitrary, capricious or in contravention of the Act, and is not unconstitutional. The lower court erred in ruling that it was.

This really disposes of this lawsuit. By the provisions of Rule 14-2-6 the licensee was responsible for the act of her husband, he being her agent and employee, in selling and delivering alcoholic liquor at the residence address, and on a Sunday, and this is true even absent authorization, knowledge or approval thereof on her part. That being the case, her license was subject to suspension or cancellation, the Director was fully justified in revoking it, and the order of the lower court reinstating it was erroneous.

The judgment is therefore reversed with directions to enter judgment in favor of appellant.

SMITH, J. (dissenting): I dissent from paragraphs 3 and 4 of the syllabus and the corresponding portions of the opinion. In my opinion the statute does not confer on the director authority to make Rule 14-2-6 and if it had attempted to do so the act would be void as an attempt to confer legislative power on an administrative body.

At the outset, we have the three branches, legislative, executive and judicial. It is true the last few decades have convinced some of our so-called better people that the legislative branch should be by-passed and we could get along better with just the executive and judicial, but I for one am not willing to concede that.

This case is a classic example of such thinking. The legislature in 1949 enacted chapter 242. It is described as the Kansas Liquor Control Act and has 125 sections. It goes into great detail as to what liquor dealers, both wholesale and retail, may and may not do. One would not be considered unreasonable should he con-

clude that the legislature covered the ground. It was deemed wise amongst other things to create a separate agency to enforce this law rather than let that be the responsibility of the regularly constituted officials—hence the office of State Director of Alcoholic Beverage Control and the Alcoholic Beverage Control Board. The business of controlling the sale of alcoholic beverages rather than prohibiting it was such a new and shocking step for our lawmakers that it was deemed wise to hedge this business with as many safeguards as could be thought of.

It is interesting to note that section 14 of the act enumerates the powers conferred upon the director. I find no general authority for making rules. Indeed paragraph (2) of section 14 confers upon the director authority to establish rules not inconsistent with federal laws for the proper labeling of containers. It occurs to me had the legislature intended to confer general rule-making power upon the director it would have mentioned it amongst these enumerated powers instead of mentioning this limited rule-making power.

Section 15 says in the first sentence:

"The director shall adopt and promulgate such rules and regulations as shall be necessary to carry out the intent and purposes of this act."

Later in the section we find a provision:

"It is intended by this grant of the power to adopt rules and regulations, that the director shall be clothed with broad discretionary powers to govern the traffic in alcoholic liquors, and to enforce strictly all the provisions of this act in the interest of sanitation, purity of products, truthful representation and honest dealings in such manner as generally will promote the public health and welfare. All valid rules and regulations adopted under the provisions of this act shall be absolutely binding upon all licensees and enforceable by the director through the power of suspension or cancellation of licenses."

The next section, section 16, provides that

"The rules and regulations established by the director, among other things, shall include regulations."

Then appear some ten provisions as to what these regulations of the director shall cover, no provision to cover the instant rule.

Now let us see what the legislature provided about violations of the act.

We find section 99, now G. S. 1949, 41-904, providing

"Every act or omission of whatsoever nature constituting a violation of any of the provisions of this act, by any officer, director, manager or other agent or employee of any licensee, if such act is committed or omission is made with the authorization, knowledge or approval of the licensee, shall be deemed and held to be the act of such employer or licensee, and such employer or licensee shall

be punishable in the same manner as if such act or omission had been made or omitted by him personally."

The legislature in that section provided that the acts of any officer, director, manager or other agent or employee of any licensee should not be a violation of the act unless done with the authorization, knowledge or approval of the licensee.

Now Rule No. 14-2-6 provides:

"Licensees are at all times responsible for the conduct of their business and are at all times directly responsible for any act or conduct of any employee on the premises, which is in violation of the act or the rules and regulations of the director."

The majority opinion holds that section 41-904, G. S. 1949, only applies to criminal violations and that Rule 14-2-6 only covers matters providing for the cancellation of a license.

I cannot see this distinction. The majority opinion says sound public policy requires that such a rule be made. That is another way of stating "the end justifies the means" or in other words, the liquor traffic is difficult to control—hence in order to control it more expeditiously we had better forget about the constitution. Frankly to me this is bureaucracy gone mad. One can hardly pick up a paper today without reading some tirade against bureaucracy and the drift toward making ours a government of men instead of one of laws. There is sound basis for much concern in that regard. Bureaucracy is bureaucracy whether it is in Washington or in Topeka. If the legislature had intended that there should be such a provision as is contained in Rule 14-2-6 it could have inserted such amongst the other 125 provisions. It at least could have added it to the provisions of G. S. 1949, 41-715, which provides that a sale by an employee to a minor is an offense of the licensee whether the licensee knew about it or not. To me this rule, 14-2-6, is repugnant to every thought I have ever had about our legal system. Our books are full now of bad law written trying to make the old prohibitory law work. I hate to embark on another series of such bad decisions. It would not be so bad if this would just apply to liquor dealers. There seems to be an open season upon them anyway. But I know within a few years the opinion of the majority of this court will be cited as authority to justify an upholding of fraud action of some board or bureau handling some legitimate business. That is the way bad law comes to be recognized and followed. If the liquor traffic is so bad a thing that we must destroy the constitution to control it, then we

had better return to prohibition. I do not want my name connected with such a holding.

Actually what happened here is that the director concluded it would have been better if the legislature had included in chapter 242, a section similar to Rule 14-2-6, and so he just proceeded to enact a rule. He legislated on a subject the legislature had covered. It is clear to me the legislature did not wish such a provision in the act or it would have put it in.