LOUIS E. BOYD and VERNON LUTHER TOWE t/a PLAZA GRILL v. T. W. ALLEN, SAM ETHERIDGE and FRANK T. ERWIN, as MEMBERS OF THE BOARD OF ALCOHOLIC CONTROL, STATE OF NORTH CAROLINA.

(Filed 1 May, 1957.)

**1. Constitutional Law § 14: Intoxicating Liquor § 1—**

Under its inherent police power, the State has the power to prohibit, regulate or restrain the use, manufacture or sale of beer within its bounds.

**2. Intoxicating Liquor § 3½—**

A retail beer permit grants the holder a special privilege limited by the statutes under which it is granted, and such permit is not a contract, or property right, or vested right in any legal or constitutional sense.

**3. Same—**

A proceeding by the State Board of Alcoholic Control to suspend a beer permit for alleged violations by the holder of G.S. 18-78.1, is an administrative proceeding, which does not involve any criminal liability of the holder of such permit. G.S. 18-78.

**4. Same—**

The revocation or suspension of a retail beer permit for violation of the statutory regulations is done in the exercise of the police power of the State in the interest of public morals and welfare, and does not violate Article I, Section 17, of the Constitution of North Carolina.

**5. Same—**

Findings of fact, supported by evidence, that the employees of the holders of a beer permit sold whiskey on the premises, and sold beer consumed by the purchaser on the premises after closing hours and at a time when the sale of beer was prohibited by law, support judgment suspending the permit, notwithstanding the further stipulation that the holders had no knowledge of the unlawful conduct of the employees.

APPEAL by petitioners from *Seawell, J.,* September Term 1956 of WAKE.

Petition for a judicial review, under G.S. 143-306 *et seq.,* of a final administrative decision by the State Board of Alcoholic Control suspending the retail beer permit of petitioners for a period of twelve months.

Petitioners, as partners, operate the Plaza Grill in Charlotte, a restaurant and "drive-in," and have a retail beer permit for the premises. Respondents are the chairman and members of the State Board of Alcoholic Control.

On 13 April 1956 Earl L. Weathersby, Assistant Director of the Malt Beverage Division of the State Board of Alcoholic Control, wrote petitioners a letter notifying them that the State Board of Alcoholic Control had received a report from one of its inspectors charging them on 24 March and 6 April 1956 with violating the Alcoholic Beverage Control Laws and the regulations promulgated by the State Board by (1) possessing and allowing the possession of whiskey on licensed premises, by (2) allowing the sale and consumption of whiskey on licensed premises, by (3) selling and allowing the sale of beer on licensed premises during illegal hours, by (4) failing to give licensed premises proper supervision, and by (5) failing to maintain a suitable outlet for the sale of beer. This letter notified petitioners of the date, hour and place for them to appear, and show cause, if any they could, why their beer permit should not be revoked, and stated to them they had a right to have counsel and offer evidence.

Weathersby conducted the hearing, when and where considerable evidence was offered by the parties. These are the crucial findings of fact made by Weathersby: Petitioners have six employees, including two curb boys. About 11:00 p.m. on 24 March 1956 State ABC Investigator, Fred W. Thompson, drove his car on the premises of the Plaza Grill, where there is drive-in curb service. There he asked John Cure-

ton, a curb boy employee of petitioners, for whiskey. Cureton said he was out of tax paid whiskey, but had a jar of white whiskey. Thompson said he would take it. Cureton went to his car at the rear of petitioners' drive-in lot, and got out of the trunk a half gallon jar of non-tax paid whiskey. Thompson paid him $5.50 for it. About 11:55 p.m. on 6 April 1956 the same investigator again visited the premises of Plaza Grill, and purchased after closing hours from James Robinson, another curb boy employee of the petitioners, a can of beer, which he drank on the premises. At the same time the investigator made arrangements with John Cureton for the purchase of a case of whiskey. Upon the findings made by him, Weathersby recommended that petitioners' beer permit be suspended for twelve months.

The State Board of Alcoholic Control rendered a final administrative decision reviewing and approving the findings of fact by Weathersby to the effect that petitioners allowed the sale of beer on licensed premises during illegal hours, allowed the possession and sale of whiskey on licensed premises, and failed to give licensed premises proper supervision. Whereupon, the State Board suspended petitioners' retail beer permit for twelve months, effective 26 May 1956.

Petitioners filed a petition in the Superior Court of Mecklenburg County praying for a writ of *certiorari* to bring up for review the decision of respondents, and for a permanent injunction to prevent the suspension of their retail beer permit. By consent of the parties the proceeding was transferred to the Superior Court of Wake County, and it was stipulated and agreed by the parties that the petition filed in the Superior Court of Mecklenburg County should be regarded for all purposes as a petition filed under the terms of G.S. 143-309.

Judge Seawell, after examining and considering the record and the argument of counsel, rendered judgment affirming the findings of fact and decision of the State Board of Alcoholic Control, and ordering that petitioners surrender to the State Board their retail beer permit. However, the surrender of the beer permit was stayed pending this appeal.

The parties entered into this stipulation: "That there is no evidence in the record before defendant that petitioners herein had any knowledge of the conduct of their servants, John Cureton or James Robinson, whose activities constitute the basis of the charges filed against petitioners before the Board of Alcoholic Control for the State of North Carolina."

From the judgment entered, petitioners appeal.

*McDougle, Ervin, Horack & Snepp  By: Frank W. Snepp for Plaintiffs, Appellants.*

*George B. Patton, Attorney General, Claude L. Love, Assistant Attorney General, and Thomas S. Harrington, Staff Attorney, for Defendants, Appellees.*

PARKER, J.   Under its inherent police power the State of North Carolina has the right to prohibit, regulate or restrain the use, manufacture and sale of beer within its bounds.  *S. v. Kittelle,* 110 N.C. 560, 569, 15 S.E. 103; *Bailey v. Raleigh,* 130 N.C. 209, 41 S.E. 281; *S. v. Williams,* 146 N.C. 618, 61 S.E. 61; 30 Am. Jur., Intoxicating Liquors, sec. 22; 48 C.J.S., Intoxicating Liquors, sec. 33.   The liquor business "stands, by universal consent, in a class peculiarly within the police power." *Blackman Health Resort v. Atlanta,* 151 Ga. 507, 107 S.E. 525, 17 A.L.R. 516.

A retail beer permit grants the holder a special privilege or permission to engage in the beer selling business, and is limited by the statutes under which such permit or license is granted.   The permit is not a contract, and confers no contract rights.   It is generally held that the permit or license is not property or a vested right, in the ordinary meaning of those terms, in any legal or constitutional sense.   48 C.J.S., Intoxicating Liquors, sec. 109(a); 30 Am. Jur., Intoxicating Liquors, sec. 136.   In *Fitzpatrick v. Liquor Control Commission,* 316 Mich. 83, 25 N.W. 2d 118, 172 A.L.R. 608, the Court said: "A license to engage in traffic in alcoholic liquor is not a contract in the sense that the licensee has thereby acquired any vested property rights.   It is in the nature of a permit and the traffic is at all times subject to the control of the State in the exercise of its police power."

In 30 Am. Jur., Intoxicating Liquors, Section 142, it is said: "A liquor license is at all times within the control of the legislature, and may be revoked, annulled, or amended at its pleasure."

G.S. 18-78.1 provides that no holder of a license authorizing the retail sale of beer, for consumption on the premises where sold, or any servant, agent, or employee of the licensee, shall (3) sell beer "upon the licensed premises or permit such beverages to be consumed thereon, on any day or at any time when such sale or consumption is prohibited by law," or "(5) sell, offer for sale, possess, or permit the consumption on the licensed premises of any kind of alcoholic liquors the sale or possession of which is not authorized under his license."

G.S. 18-141 prohibits the sale and consumption of beer on licensed premises during certain hours.

G.S. 18-78 states the State Board of Alcoholic Control "may revoke or suspend the State permit of any licensee for a violation of the provisions of this article or of any rule or regulation adopted by said Board," (Beverage Control Act of 1939).   This statute provides for a notice to the licensee and for a hearing, which was done here.

The petitioners had no license to sell whiskey.   The findings of fact, which are supported by sufficient competent evidence, are that John Cureton, a curb boy employee of petitioners, on 24 March 1956, sold to a State ABC Inspector on the licensed premises a jar of non-tax paid

whiskey for $5.50, and that on 6 April 1956, after closing hours and during a prohibited time, James Robinson, another curb boy employee of petitioners, sold a can of beer on the licensed premises to the same Inspector, and that at the same time and place, John Cureton made arrangements to sell the Inspector a case of whiskey.

The parties stipulated that there is no evidence in the record that petitioners had any knowledge of John Cureton's sale of whiskey on the licensed premises, or of James Robinson's sale of beer on the licensed premises during prohibited hours and of Cureton's arrangements to sell a case of whiskey. Petitioners contend that the State Board of Alcoholic Control is not authorized by law to suspend their retail beer permit for the illegal acts of their two curb boy employees done without their knowledge or consent.

The proceeding by the State Board of Alcoholic Control is not a criminal proceeding against petitioners, but an administrative proceeding authorized by G.S. 18-78 for the purpose of revocation or suspension of petitioners' retail beer permit for alleged violations of G.S. 18-78.1. This is a specific remedy authorized by statute for violations of the Beverage Control Act or of any rule or regulation adopted by the Board. It is to be noticed that the question in this case is not whether petitioners are criminally liable for their employees' acts, but whether their retail beer permit can be suspended by the State Board because of their employees' violations of G.S. 18-78.1.

The petitioners had a retail beer permit issued to them by the statutory law of the State, and they placed beer in charge of John Cureton and James Robinson, their curb boy employees, to sell as a beverage. These employees had no license to sell beer. Can petitioners put these employees in their shoes, give them the benefit of the permit issued to them, and not be held responsible for their violations of the law found as facts in the instant proceeding, because they had no knowledge of these violations of the law? Upon the facts found the law has been violated. Can petitioners set up their beer emporium, receive its profits, and abdicate their duties to prevent illegal sales of beer and whiskey on their premises by their employees? Or, will the law look to the licensees, the persons it permitted to sell beer on their premises, and hold them responsible for the unlawful acts of their employees engaged in the retail sale of beer?

It is generally agreed that the business of dealing in or with intoxicating liquors is not a common, inherent, constitutional or vested right, but, if a right at all, is one held subject to the police power of the State. It is one affecting the public health, morals, safety and welfare in such a way that State control of it under the police power is so great as to range from complete prohibition to many lesser degrees of regulation and constant surveillance. 30 Am. Jur., Intoxicating Liquors, p. 262,

sec. 19 *et seq.;* p. 264, sec. 22 *et seq.;* p. 326, sec. 136; Anno. 3 A.L.R. 2d, pp. 108-111. The legislation for the revocation or suspension of a retail beer permit for the causes found to exist in this proceeding is an exercise of the police power of the State in the interests of public morals and welfare, is reasonable, bears a real and substantial relationship to the public purpose sought to be accomplished by the Legislature in the Beverage Control Act, tends to preserve public morals and welfare, and is not in violation of Article I, Section 17, of the North Carolina Constitution, as contended by petitioners. 11 Am. Jur., Constitutional Law, Sections 305 and 306. See 12 Am. Jur., Constitutional Law, Sections 405, 463, 467, 497 and 499.

In 12 Am. Jur., Constitutional Law, Section 467, it is written: "It is settled that the states have full control over all matters relating to intoxicating liquors within their local sovereignties and that the usual regulations pertaining to liquors in general do not violate any of the constitutional rights of the citizen. Thus, the entire business of manufacturing and selling intoxicating liquors is completely within the control of the states. There is nothing in the Constitution of the United States to prevent them from regulating and restraining the traffic or from prohibiting it altogether. The right to sell intoxicating liquors is not one of the privileges or immunities of a citizen of the United States or an inherent right of citizenship. The state may grant to one class the privilege to sell liquor and deny it to another class. It may restrict the right to obtain licenses for the sale of intoxicating liquors to the male inhabitants of the state."

The petitioners, the licensees, elected to operate their retail beer business at least in part with employees, and they must be responsible to the licensing authority for their employees' conduct in the exercise of their license, whether they know about it or not, else we would have the absurd result that beer could be sold at forbidden hours on the premises by their employees and whiskey sold on the premises by their employees, and the licensees would be immune to disciplinary action by the State Board of Alcoholic Control, if they had no knowledge of it. Such a result would cause a complete breakdown of beverage control by the State, and cannot have been contemplated by the Legislature.

In a number of cases the courts have upheld revocation, cancellation or suspension of liquor licenses because of improper, or wrongful or unlawful acts of the licensees' employees or agents, although such acts are committed against the instructions of the licensee or without his knowledge or consent. This is sound law, which we adopt. *Cornell v. Reilly*, 127 Cal. App. 2d 178, 273 P. 2d 572, 578; *Mantzoros v. State Bd. of Equalization*, 87 Cal. App. 2d 140, 144, 196 P. 2d 657, 660; *Chambers v. Herrick*, 172 Kan. 510, 241 P. 2d 748; *Anschutz v. Michigan Liquor Control Commission*, 343 Mich. 630, 73 N.W. 2d 533; *In re Suspension*

*of License by Oregon Liq. Contr. Com.,* 180 Oregon 495, 177 P. 2d 406; *Bradley v. Texas Liquor Control Board,* Tex. Civil Appeals, 108 S.W. 2d 300; 48 C.J.S., Intoxicating Liquors, p. 282; 30 Am. Jur., Intoxicating Liquors, Section 146 and particularly the 1956 Cumulative Supp., Section 146, "p. 331 Add, following note 3"; Anno. 3 A.L.R. 2d pp. 108-111, where numerous cases are cited; Ann. Cas. 1912 A 1111, where many cases are cited. See *Texas Liquor Control Board v. Warfield,* Tex. Civil Appeals, 122 S.W. 2d 669. See also *Sandstrom v. California Horse Racing Board,* 31 Cal. 2d 401, 189 P. 2d 17, 3 A.L.R. 2d 90, where it was held that: "The state may reasonably provide for the suspension, irrespective of guilty participation or culpable negligence, of a race horse trainer's license if stimulating or depressive drugs shall be found to have been administered to a horse participating in a race on the result of which wagering is permitted"; and also Anno. 3 A.L.R. 2d p. 114.

In *Chambers v. Herrick, supra,* the Supreme Court of Kansas said: "In our opinion there is no room for debate on the question whether, for the purpose of suspension or cancellation of licenses, the holder of a retail liquor license should be held responsible for the acts and conduct of his employee in the operation of the business. Sound public policy requires that he is responsible. To hold otherwise would lead to a complete breakdown of the whole system and theory of supervision contemplated by the Act, and would permit a licensee to escape liability for suspension or revocation of his license merely on the ground he had no knowledge of and had not authorized or approved a violation by the employee. In an effort to get at this very thing the Legislature has seen fit to classify those persons to whom licenses may be granted and who may be employed by licensees. In the nature of things it must be held that the licensee is responsible at all times for the acts and conduct of his employee in the operation of the business. The rule under consideration is not unreasonable, arbitrary, capricious or in contravention of the Act, and is not unconstitutional."

The lower court was correct in upholding the decision of the State Board of Alcoholic Control, and the judgment is

Affirmed.