C'EST BON, INC., T/A C'EST BON v. N. C. BOARD OF ALCOHOLIC CONTROL

No. 112

(Filed 10 June 1971)

1. **Intoxicating Liquor § 2— beer permit — violation of statutes or regulations**

   A violation of either a statute or an ABC Board regulation is sufficient to support the suspension of a retail beer permit.

2. **Intoxicating Liquor § 2— suspension of beer permit — notice and hearing**

   Before a permit can be suspended or revoked, notice must be given to the permittee of the time and place for a hearing with an opportunity for the permittee to offer evidence and to be represented by counsel, and the charges against the permittee must be specific. G.S. 18-137.

3. **Intoxicating Liquor § 2— suspension of beer permit**

   Final decision as to whether a permit should be suspended or revoked is made by the ABC Board. G.S. 18-78; G.S. 18-137; G.S. 18-138.

C'est Bon, Inc. v. Board of Alcoholic Control

4. Intoxicating Liquor § 2— findings of ABC Board

After a hearing to determine whether the permittee has violated the law or regulations, the findings of the ABC Board are conclusive if supported by competent, material and substantial evidence.

5. Intoxicating Liquor § 2— suspension of beer and social establishment permits — sufficiency of evidence and findings

There was substantial competent evidence to sustain findings by the ABC Board that petitioner (1) sold and allowed the consumption of beer on its premises during illegal hours, (2) permitted an employee to consume intoxicating beverages on the premises, (3) permitted an intoxicated person to remain on the premises for a considerable length of time, and (4) failed to give the licensed premises proper supervision on specified dates, any one of which would support the Board's suspension of petitioner's retail beer and social establishment permits. G.S. 18-51(7)b; G.S. 18-78(d).

APPEAL by petitioner from *Brewer, J.,* February 1971 Special Non-jury Civil Session of WAKE Superior Court, transferred to this Court for initial appellate review by virtue of the general transferral order of 31 July 1970.

This proceeding originated by notice dated 2 July 1970 to C'est Bon, Inc., 2316-2318 Central Avenue, Charlotte, North Carolina, to appear before the Hearing Officer of the State Board of Alcoholic Control on 14 July 1970 to show cause why its retail beer permit and alcoholic beverage social establishment permit should not be revoked or suspended. The notice specified the following violations occurred on the nights of June 26 and 27, 1970: (1) Selling and/or allowing the sale of beer and permitting the consumption of beer during illegal hours; (2) permitting and allowing B. B. Jasper, an employee, to consume intoxicating beverages (whiskey) on the premises; (3) permitting and allowing persons in an intoxicated condition to loiter on the premises; (4) failing to clear all counters and tables of beverages, bottles, cans and containers by 12 midnight; (5) failing to give the licensed premises proper supervision; and (6) no longer considered to be a suitable place for persons to hold a State retail beer and/or alcoholic beverage social establishment permit.

The hearing was postponed until 11 September 1970, at which time it was conducted before D. L. Pickard, Assistant Director and Hearing Officer. Petitioner was represented by Michael Plumides, attorney. State ABC Officers Joel E. Brewer, Jack Marion, and John Wilson were witnesses for the Board.

Officer Brewer testified that when these charges arose the C'est Bon held an on-premise beer permit and a social establishment permit.

Officer Marion testified in substance that on Friday and Saturday nights, 26 and 27 June 1970, he and Officer Wilson went to the C'est Bon as undercover agents. While there on the night of June 26, he observed B. B. Jasper, an entertainer employed by C'est Bon, drinking liquor from a fifth of whiskey between 11:15 p.m. and 3:00 a.m., three topless dancers getting a mixed drink from the C'est Bon bartender at 11:50 p.m., a waitress of the club serving four cans of Budweiser beer at 12:03 a.m. to two couples, and three staggering males at 12:20 a.m. Officer Marion further testified that on the night of June 27 he observed Jasper again drinking liquor at intervals from a fifth of whiskey and that an employee of the C'est Bon brought a pint bottle to Jasper's table at approximately 1 a.m.; that at 1:35 a.m. a drunk man came by the table where Officers Marion and Wilson were sitting and fell to the floor; that the bouncer employed by the club told this man that he would have to sit down; that the intoxicated man got up from the floor and went over to a table, and when the officers left the man was sitting at the table "passed out."

Officer Wilson corroborated Officer Marion's testimony except he testified that he could not see the bar from where he was sitting and did not see the bartender mix drinks for the three topless performers on June 26.

Mr. Richard Bonavita, bartender for the C'est Bon; Mr. Bill Moore, C'est Bon's manager; and Mr. Waban Thomas, C'est Bon's floor manager or bouncer, testified for the petitioner. Mr. Bonavita testified that it was the policy of C'est Bon to set the clock up five minutes on Saturday nights to give an additional five minutes to clear tables; that when the clock shows 11:45 p.m. he puts all beer away; that on busy nights he, Mr. Moore, and Mr. Thomas assist in clearing tables so that they can be cleared by midnight; that to the best of his knowledge the tables were cleared by midnight on the nights of 26 and 27 June 1970.

Mr. Moore testified that C'est Bon had previously been warned by the ABC Board about Jasper's on-premises drinking; that he had informed Jasper that while he was *employed* at the club he was not allowed to drink; that Jasper was fired for drinking when the notice of 2 July 1970 was served on Mr.

C'est Bon, Inc. v. Board of Alcoholic Control

Moore; that it was C'est Bon's policy to evict all drunks; that the topless dancers are not permitted to bring whiskey on the premises; that if they drink, it is without his knowledge; and that the waitresses are instructed to tell him if they see one of the dancers drinking.

Mr. Thomas testified that the customer accused of being "passed out" at 1:35 a.m. on 27 June 1970 was not drunk, but only tripped over an unlighted step and sat down with his head in his hand to rest; that he assisted this particular customer to the table and would have known if he was drunk; that had the customer been drunk he would have been out of the C'est Bon in two seconds; and that he had had much experience in determining whether a person is drunk or not.

After the hearing, Hearing Officer Pickard found as a fact that C'est Bon, Inc., T/A C'est Bon, permitted and allowed B. B. Jasper, an employee, to consume intoxicating beverages (whiskey) on or about 26 and 27 June 1970 on its retail licensed premises, and further found as a fact that this permittee failed to give its retail licensed premises proper supervision by allowing B. B. Jasper, an employee, to consume intoxicating beverages (whiskey) on its retail licensed premises on those dates. The Hearing Officer then recommended that the licensee's permits be suspended for a period of 30 days.

On 19 October 1970, after reviewing the entire transcript, including the findings of fact and recommendations of Hearing Officer Pickard, and hearing the argument of Michael G. Plumides, counsel for petitioner, the State ABC Board found as facts that the permittee (1) sold and allowed the sale and consumption of beer during illegal hours on 27 June 1970; (2) permitted B. B. Jasper, an employee, to consume intoxicating beverages (whiskey) on its licensed premises on or about 26 and 27 June 1970; (3) permitted persons in an intoxicated condition to loiter on the licensed premises on or about 28 June 1970; and (4) failed to give the licensed premises proper supervision on or about 26, 27, and 28 June 1970, and the Board thereupon concluded as a matter of law that the permittee had violated G.S. 18-78 (b) (c) (d) (e) and (f), G.S. 18-78.1 (3), G.S. 18-141, Board of Alcoholic Control Malt Beverage Regulations Nos. 30 (6) and 30 (1), and Alcoholic Beverage Social Establishment Regulation No. 8 (a). The Board, based upon these conclusions, ordered that petitioner's on-premises beer and social establish-

ment permits be suspended for a period of 90 days effective 29 October 1970.

Petitioner excepted to the full Board's order and filed a petition for judicial review in Wake County Superior Court. Upon the petitioner's motion, a temporary stay of the Board's action was issued by Judge Clark on 27 October 1970 pending final judicial review.

On 8 February 1971 Judge Clark granted the motion of petitioner that it be allowed to present evidence as to prejudice and bias of a member of the ABC Board, Harold Edwards. After allowing this motion, Judge Clark set the cause for hearing before Judge Brewer. The hearing was held before Judge Brewer at the 22 February 1971 Session on the record and on additional evidence for the petitioner, consisting of an affidavit of Michael G. Plumides, attorney for petitioner. Plumides in his affidavit stated in substance that Board member Edwards refused to grant a requested continuance of the hearing originally set for 24 July 1970 (later a sixty-day continuance was granted), that Edwards made a motion to enlarge the findings of fact made by the Hearing Officer to include the other alleged charges and to extend the recommended punishment from 30 to 90 days, that Edwards had undercover men to visit C'est Bon on several occasions, and that such actions showed Edwards was biased and prejudiced against C'est Bon.

In reply to the Plumides' affidavit, the affidavits of Board member Edwards and of W. Charles Cohoon, Chairman of the Board, were introduced. The affidavit of Edwards was to the effect that he had received numerous complaints concerning the C'est Bon, as well as other premises in the city of Charlotte, and that because of these complaints, Edwards requested the supervising ABC Officer of Mecklenburg County to give special attention to these premises and to see that the law was properly enforced and that violations were not taking place. The affidavit of Cohoon stated that at the meeting of the full Board on 19 October 1970 all members of the Board concurred in the action suspending for 90 days the permits of C'est Bon, Inc.

At the conclusion of the hearing in Superior Court, Judge Brewer, after reciting in his judgment the various proceedings which had taken place in the case, found:

C'est Bon, Inc. v. Board of Alcoholic Control

"The findings of fact and decision of the defendants herein are supported by competent, material and substantial evidence in view of the entire record as submitted and evidence, and affidavits submitted this date and the substantial rights of the plaintiff have not been prejudiced; that said decision is in compliance with the applicable constitutional provisions, within the statutory authority or jurisdiction of defendants and pursuant to the law and a lawful procedure, is neither arbitrary nor conspicuous [sic]; that there was no fraud, manifest abuse or discretion or conduct in excess of lawful authority; and upon the entire record and upon the evidence and affidavits submitted herein, the decision herein judicially reviewed, should be affirmed."

Thereupon Judge Brewer entered judgment affirming the decision of the Board and dissolving the preliminary stay order heretofore entered in the proceeding.

From this judgment the petitioner gave notice of appeal. Judge Brewer stayed the suspension of the license of the petitioner pending the determination of the appeal.

*Plumides & Plumides for petitioner appellant.*

*Attorney General Robert Morgan and Assistant Attorney General Mrs. Christine Y. Denson for respondent appellee.*

MOORE, Justice.

[1] The State Board of Alcoholic Control has the authority to regulate and supervise the sale and distribution of alcoholic beverages. Only those holding a permit from the Board may engage in the sale and distribution of beer. The permit is a privilege granted to those who meet the standards which have been established by the General Assembly or regulations adopted by the Board pursuant to the authority granted by G.S. 18-78(d), and the permit may and should be revoked if the permittee violates the laws or regulations pertaining to such permit. A violation of either a statute or a regulation is sufficient to support the suspension of the license. G.S. 18-78(d); *Keg, Inc. v. Board of Alcoholic Control,* 277 N.C. 450, 177 S.E. 2d 861; *Wholesale v. ABC Board,* 265 N.C. 679, 144 S.E. 2d 895; *Boyd v. Allen,* 246 N.C. 150, 97 S.E. 2d 864.

[2, 3] Before a permit can be suspended or revoked, G.S. 18-137 requires notice to the permittee of the time and place for

a hearing with an opportunity for the permittee to offer evidence and to be represented by counsel. The charges against the permittee must be specific. The hearing may be before the Director or a Hearing Officer. After the hearing, the Hearing Officer reviews all the evidence, records his findings of fact and conclusions of law, and makes his recommendations to the Board. The Chairman of the Board causes the record, findings, conclusions, and recommendations of the Hearing Officer to be submitted to the Board for approval, modification, or rejection as the Board may find to be justified by the record. The Board makes the final decision. G.S. 18-78; G.S. 18-137; G.S. 18-138; North Carolina Board of Alcoholic Control Inspection and Enforcement Rule 3.A.8; *Sinodis v. Board of Alcoholic Control,* 258 N.C. 282, 128 S.E. 2d 587.

[4] After a hearing to determine whether the permittee has violated the law or regulations, the findings of the Board are conclusive if supported by competent, material and substantial evidence. *Keg, Inc. v. Board of Alcoholic Control, supra; Freeman v. Board of Alcoholic Control,* 264 N.C. 320, 141 S.E. 2d 499; *Campbell v. Board of Alcoholic Control,* 263 N.C. 224, 139 S.E. 2d 197; *Thomas v. Board of Alcoholic Control,* 258 N.C. 513, 128 S.E. 2d 884.

On appeal to the court for judicial review of the Board's decision, it is the duty of the court to review the evidence and determine whether the Board had before it any material and substantial evidence sufficient to support its findings. *Wholesale v. ABC Board, supra.*

[5] In the present case the Board found as a fact, based upon the testimony of two eyewitnesses, that the permittee sold and allowed the consumption of beer on its premises at approximately 12:03 a.m. This was a violation of G.S. 18-78.1 (3), which provides it is unlawful to "sell such beverages upon the licensed premises or permit such beverages to be consumed thereon, on any day or at any time when such sale or consumption is prohibited by law," and of G.S. 18-141 which provides that beer will not be sold between the hours of 11:45 p.m. and 7:30 a.m., and will not be consumed on the premises between 12 midnight and 7:30 a.m.

The Board further found as a fact, based upon testimony of the same eyewitnesses that the permittee allowed B. B. Jasper, an employee, to consume intoxicating beverages (whiskey) on

C'est Bon, Inc. v. Board of Alcoholic Control

the premises on 26 and 27 June 1970. Malt Beverage Regulation No. 30 provides:

> "30. Permits authorizing the sale at retail of beverages, as defined in G.S. 18-64, and Article 5 of Chapter 18 of the General Statutes, for on or off premises consumption may be suspended or revoked upon violation of any of the following provisions upon the licensed premises:

> \*    \*    \*

> "6. Any permittee or employee consuming intoxicating beverages on the premises. . . ."

The petitioner contends that Jasper was an independent contractor and was not an employee of the club. However, in an affidavit filed by Jasper, he states that he was informed by the management of C'est Bon that if he were caught drinking alcoholic beverages on the premises "my *employment* would be terminated; . . ." Again in his affidavit he indicates that his drinking under the table was done "out of the sight of my *employer*. . . ." (Emphasis added.) In addition, Moore, the manager of C'est Bon, testified that he told Jasper that he was not allowed to drink while *employed* there. We hold that the overwhelming evidence that Jasper was openly consuming alcoholic beverages (whiskey) served to him by an employee of the club, while Jasper was on the premises for the purposes of entertaining customers, amply supports the finding that an employee was permitted to consume intoxicating beverages on the premises, a violation of Malt Beverage Regulation No. 30 (6).

Malt Beverage Regulation No. 30 (1) and Social Establishment Regulation No. 8 (2) provide that a license may be revoked or suspended for permitting intoxicated persons to loiter on the licensed premises. The evidence was sufficient to support a finding that at least one person was intoxicated to the extent that he fell down and finally "passed out" at his table where he remained for a considerable length of time. Permitting this to occur would constitute a violation of Regulations No. 30 (1) and No. 8 (2).

The specific findings discussed above would justify the final finding of the Board that the permittee failed to give the licensed premises proper supervision on or about 26, 27, and 28 June 1970, a violation of G.S. 18-78.

Any one of the above recited violations would support the suspension of C'est Bon's permit to sell beer at retail and C'est Bon's social establishment permit. G.S. 18-51(7)b; G.S. 18-78(d) ; *Keg, Inc. v. Board of Alcoholic Control, supra.*

As stated by Justice Higgins in *Freeman v. Board of Alcoholic Control, supra.*

" ' . . . Courts will not undertake to control the exercise of discretion and judgment on the part of members of a commission in performing the functions of a State agency.' *Williamston v. R. R.,* 236 N.C. 271, 72 S.E. 2d 609. 'When discretionary authority is vested in such commission, the court has no power to substitute its discretion for that of the commission; and in the absence of fraud, manifest abuse of discretion or conduct in excess of lawful authority, the court has no power to intervene.' *Pharr v. Garibaldi,* 252 N.C. 803, 115 S.E. 2d 18. 'Hence it is that the findings of the board, when made in good faith and supported by evidence, are final.' *In re Hastings,* 252 N.C. 327, 113 S.E. 2d 433."

There is no evidence of fraud, manifest abuse of discretion, conduct in excess of lawful authority, or that the Board acted arbitrarily or capriciously.

The judgment of the Superior Court is in all respects affirmed, and the order entered by Judge Brewer staying the operation of the order entered by the State Board of Alcoholic Control on 19 October 1970 pending the appeal is vacated.

Affirmed.