DOULTON HILL AND MORGAN D. CAMPBELL, T/A CLUB RIVIERA v. STATE BOARD OF ALCOHOLIC CONTROL

No. 7310SC194

(Filed 14 March 1973)

1. **Intoxicating Liquor § 2— suspension of ABC permits — sale of liquor on premises**

In a proceeding to revoke petitioners' on premise beer, restaurants and related places and social establishment permits, there was sufficient evidence to support the State's charge that petitioners sold liquor on the licensed premises in violation of G.S. 18A-3(a), though the evidence was insufficient to support the State's charge that petitioners violated G.S. 18A-25(b) by selling on the licensed premises liquor purchased from a county or municipal store.

2. **Intoxicating Liquor § 2— suspension of ABC permits — identification of club based on hearsay**

Contention that the charges brought by the ABC Board against the operators of a club should be dismissed because the ABC officer's identification of the club where the alleged violations occurred as the Club Riviera was based on hearsay evidence is untenable where the officer's testimony was uncontradicted and both permittees were present on the premises when the violations allegedly occurred.

APPEAL by petitioners from *Bone, Judge,* Civil Session of Superior Court held in WAKE County.

Petitioners operate Club Riviera, located on a Kernersville rural route near Winston-Salem. They hold on premise beer, restaurants and related places, and social establishment permits issued by the State Board of Alcoholic Control. Notice was served upon petitioners to appear before a hearing officer of the State Board of Alcoholic Control on 17 August 1972 and show cause why their permits should not be revoked or suspended for:

"(1) Possession, possession for the purpose of sale and selling and/or allowing the possession, possession for the purpose of sale and the sale of tax-paid liquor and unforti-

fied wine on your retail licensed premise on or about June 2, 1972, 10:30 and 11:30 p.m. and June 4, 1972, 12:15 a.m. in violation of G.S. 18A-3(a) and G.S. 18A-25(b).

(2) Permitting and/or allowing the sale of beer during illegal hours on your retail licensed premise on or about June 3, 1972, 2:10 a.m. in violation of G.S. 18A-33(a).

(3) Failing to give your retail licensed premise proper supervision on or about June 2, 1972, 10:30 and 11:30 p.m., June 3, 1972, 2:10 a.m. and June 4, 1972, 12:15 a.m. G.S. 18A-43(a).

(4) No longer considered to be suitable persons or place to hold a State retail beer, wine, Alcoholic Beverage Restaurants and Related Places and Special Occasions permits. G.S. 18A-43(b)."

Petitioners appeared at the hearing with counsel; however, only the Board presented evidence. Its evidence tended to show that a State ABC officer assigned to the Charlotte-Mecklenburg area was sent to the Club Riviera because of complaints by members of the Winston-Salem Police Department that liquor was being sold at that Club. The officer, accompanied by a confidential informer, arrived at the Club at approximately 10:30 p.m. on 2 June 1972. He testified that he purchased drinks for himself, his informer, and two young women who joined them at their table. One drink was gin and the others were scotch. The drinks were served by a waitress called "Me-Me" and were prepared by one of the petitioners, Morgan Campbell, who is sometimes called "Frog." Payment for the drinks was made to the waitress. The other petitioner, Doulton Hill, was at the door receiving cover charges and stamping customers' hands as they entered. The witness testified that he remained at the Club until the morning of 3 June 1972, and at approximately 2:10 a.m. on that morning he ordered two bottles of Budweiser beer. The beer was served by the same waitress and the witness paid her $1.70 for both bottles.

At 12:15 a.m. on 4 June 1972, the witness went back to the Club and ordered two scotch and 7-Ups. The same waitress, "Me-Me," served the drinks and the witness paid her $2.20 for them. While at the Club on this occasion, the witness saw the same bartender, petitioner Campbell, sell or serve six 4/5 pints of Boone's Farm Wine.

The hearing officer made findings of fact consistent with the evidence and recommended that petitioners' permits be suspended for sixty days. On 11 September 1972, the State Board of Alcoholic Control reviewed the record and findings of the hearing officer and found as a fact that petitioners did "on June 4, 1972, possess and possess for the purpose of sale and did sell liquor on your retail licensed premises and permitted and allowed the sale of beer during illegal hours on your retail licensed premise on or about June 3, 1972, at 2:10 a.m., in violation of G.S. 18A-33(a)."

Based upon these findings, the petitioners' permits were suspended for a period of sixty days. Petitioners appealed to the Wake County Superior Court and from a judgment of that court affirming the action of the Board of Alcoholic Control, petitioners appealed to this Court.

*Attorney General Morgan by Associate Attorney Kramer for the State.*

*Charles J. Alexander III and Robert H. Sapp for petitioner appellants.*

GRAHAM, Judge.

[1] Petitioners contend that in order for them to be found in violation of G.S. 18A-25(b), it was necessary for the State to charge and prove that the liquor sold was purchased from a county or municipal store. G.S. 18A-25(b) prohibits the possession for sale, or sales, of any liquor *purchased from any county or municipal store*. While this statute is cited in the notice served upon petitioners, G.S. 18A-3(a) is also cited therein, and the uncontradicted evidence before the Board clearly shows that petitioners violated this section. G.S. 18A-3(a) provides that "[n]o person shall manufacture, sell, barter, transport, import, export, deliver, furnish, purchase, or possess any intoxicating liquor except as authorized in this Chapter." Suffice to say, there is no provision in Chapter 18A of the General Statutes, or in any other law in this State, that authorizes the sale of liquor in private or public clubs or restaurants in this State.

[2] Petitioners further contend that the charges should have been dismissed because the ABC officer's identification of the Club as the Club Riviera was based upon hearsay evidence. This

argument is without merit. The testimony of the witness as to the identification of the Club was not contradicted. Moreover, both of the permittees were present on the premises. One was collecting cover charges at the door and the other was working as a bartender.

Any one of the two violations found by the Board would support the suspension of petitioners' permits. *C'est Bon, Inc. v. Board of Alcoholic Control*, 279 N.C. 140, 181 S.E. 2d 448. The evidence fully supports the findings of the Board as to both violations.

Affirmed.

Judges BROCK and VAUGHN concur.