### Abe Cohen v. The State.

#### No. 3738. Decided April 29, 1908.

**1.—Illegally Storing and Permitting to be Drank on Premises Intoxicating Liquors—Business—Occupation—Charge of Court—Judicial Construction.**

Upon trial of permitting intoxicating liquors to be drank within a place of business kept for storing such liquors, in local option territory, under the Act of the Twenty-ninth Legislature, p. 91, where the evidence showed that the liquor shown to have been drank on the premises was claimed by defendant

not to have been kept for hire or profit, and not as a business or occupation, but as a mere incident, and the State's proof was strong that the defendant was engaged in the business and occupation of keeping and storing such liquors and permitting them to be drank on the premises in local option territory, a definition of the words "occupation" and "business" as judicially construed before the passage of said law should have been submitted.

### 2.—Same—Occupation—Business—Definition.

Occupation as used in the Act of the Twenty-ninth Legislature, p. 91, as judicially construed, and as commonly understood, would signify, vocation, calling, trade; the business which one principally engages in to procure a living or obtain wealth. Following Standford v. State, 16 Texas Crim. App., 331; Koenig v. State, 33 Texas Crim. Rep., 367; 26 S. W. Rep., 835.

### 3.—Same—Charge of Court—Case Stated.

Where upon trial for a violation of the Act of the Twenty-ninth Legislature, p. 91, the State's case showed that defendant was engaged in the business and occupation of keeping and storing intoxicating liquors in local option territory and permitting them to be drank on the premises, and defendant's evidence raised the issue whether he was so engaged or was simply keeping said liquor as an accommodation incidental to his business of conducting a cold drink stand, and the court charged in defining the terms business and occupation, that it meant that which engages one's time and attention or labor, or that about which a person is engaged or employed; and refused a requested charge which correctly defined these terms. Held, reversible error.

Appeal from the County Court of Milam. Tried below before the Hon. John Watson.

Appeal from a conviction of unlawfully permitting, as agent, intoxicating liquors to be drank in a place of business kept for storing said liquors in local option territory; penalty, a fine of $25 and twenty days confinement in the county jail.

The following statement taken from appellant's brief is substantially correct:

That Will Scott followed the business of selling cigars, uno, soda water, and other cold drinks, and of running pool tables, and billiard tables; that he had been in this business a year or more; that two of the witnesses, Vogel and Massengale, had kept intoxicating liquors at Will Scott's place of business; that the way they came to keep such liquors at Scott's place of business was that they would get him to order the liquor for them, and when so ordered, the liquor would come to his place of business for delivery, and that when it came, they would sometimes take it away from his place of business, and sometimes leave it there, just as it suited their convenience; that Will Scott never charged anything for the keeping of such liquors, that nothing was ever paid or promised him, or any one else, directly or indirectly, for the privilege of so leaving such liquors at his said place; that when the order for the liquor was made through Will Scott, he did not promise or agree to keep or store the liquors in his place of business when it should come, that the privilege of keeping the liquors in his place of business was no part or condition of the contract in ordering the liquor, and that the liquor was left in his place of business not by any agreement or understanding; that Will Scott was not under any obligation to allow the liquor to be so kept in his place of business, and that if he had

refused to allow the liquor to be left there, he would not have violated any agreement or understanding had or entered into at the time the liquor was ordered; that the privilege of leaving the liquor at Will Scott's place of business was simply an accommodation extended by him; that the orders for the liquor were sent to Lemon & Hughes, a firm of retail saloon dealers, at Rosebud, Texas; that, ordered in this way, the liquor cost the purchasers thereof exactly the same as it retails for at all saloons, and that which was left in Will Scott's place of business cost exactly the same as that which was taken away; that a number of people kept liquor in Will Scott's place of business, and there was considerable drinking in there; that when the liquor was kept in Will Scott's place of business, and the owner of it wished to take a drink, sometimes the defendant or Will Scott would hand him the liquor, but usually the owner would get the liquor himself; that liquor bottles are saleable, that when those who kept liquor at Will Scott's place of business emptied bottles in there, the bottles were left in there, but that such bottles were simply thrown down in there, because they were considered so much junk, and that neither the defendant nor Will Scott requested that the bottles be left in there, nor otherwise referred to the bottles; that when beer was left in Will Scott's place of business it was placed in the ice box and kept cool; that Will Scott kept ice and an ice box for cooling his ino, uno and soda water, and that the beer was placed in this ice box; that Will Scott kept ice and an ice box and would have kept them whether any one left beer there or not; that nothing appeared to be hidden or concealed from the officers about the manner or method of Will Scott's business; that the witness Johnson had seen Will Scott moving a considerable number of bottles from his place of business, which the witness supposed to be partly uno and ino bottles and partly beer bottles, but did not know whether they were all uno and ino bottles or not; that none of the witnesses ever knew or heard of Will Scott or the defendant making any charge for keeping liquors in said place of business.

*R. Lyles* and *Chambers & Kidd,* for appellant.—Though it be conceded that this is sufficient to prove that Will Scott kept and stored intoxicating liquors for others, whether it is sufficient to prove that he so kept and stored such liquors as a *business* or *occupation,* depends upon what is meant by the terms "business" and "occupation."

On question of charge of court defining the terms business and occupation, counsel cited the following authorities in addition to those stated in the opinion. 21 A. & E. Encyc. of Law, 769; 6 Cyc. of Law & Proc., 259–260; Abel v. State, 90 Ala., 633; Stewart v. Atlanta Beef Co., 44 Am. St. Rep., 119; Beickler v. Guenther, 96 N. W., 895; Geo. R. Barse Live Stock Co. v. Range Valley Cattle Co., 50 Pac., 630; State v. Tolman, 106 La., 662; Eubanks v. State, 17 Ala., 181; Harris v. State, 50 Ala., 127; Weil v. State, 52 Ala., 19; Union Mut. Acc. Ass'n. v. Frohard, 25 N. E., 642; 23 Am. St. Rep., 644; Hess v. Preferred

Masonic Mut. Acc. Ass'n., 70 N. W., 460; Holliday v. Am. Mut. Acc. Ass'n., 72, N. W., 448; 64 Am. St. Rep., 170; Wildey Casualty Co., v. Sheppard, 59 Pac., 651; State v. Boston Club, 45 La. Ann., 585.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, Judge.—Appellant was convicted in the County Court of Milam County on a charge of, in substance, that one Scott was engaged in the business and occupation of keeping and storing spirituous liquors for others in Milam County, where the sale of such liquors was prohibited by law and that appellant, as agent and employee of Scott permitted one John Vogle to drink intoxicating liquors in such place of business and where such business and occupation was carried on.

There was a conflict in the evidence on many of the issues in the case. The appellant's evidence, however, tended to show that Scott allowed others to leave whisky and beer in his place of business; that he was conducting a cold drink stand and that having an ice chest, he could without inconvenience or extra expense, and as a matter of courtesy and convenience keep for others, beer and whisky in said ice chest as a matter of accommodation and not for hire; that no charge was made and nothing received or expected by him for allowing such liquors to be kept in his place of business, nor was he under any obligation or contract to keep or cool such liquors, and his ordering and keeping same was purely an accommodation and incidental to his business of conducting a cold drink stand, and that this feature of the business was not followed as a vocation, or trade for profit, or as a means of livelihood. It was claimed and contended by appellant on the trial, and the issue is now presented, that the evidence did not raise the issue, and was insufficient to establish the fact that such liquors were stored and kept in pursuance of any occupation or business. To this we can not accede. The proof was strong that Scott was engaged in the business and occupation of keeping and storing such liquors and the State's case brought him well within the Act of the Twenty-Ninth Legislature, p. 91. That act is as follows: "If any person, firm or association of persons, agent or employee of any person, firm or association of persons who are engaged in the business or occupation of keeping or storing spirituous, vinous or intoxicating liquors for others within any county, justice precinct, subdivision of a county, city or town in which the sale of spirituous, vinous and intoxicating liquors has been prohibited under the laws of this State shall permit any one to drink any spirituous, vinous or intoxicating liquors within such place of business, such person, firm or association of persons, agent or employees, shall be deemed guilty of a misdemeanor." In submitting the issue to the jury, the court charged as follows in defining what was meant by occupation and business, as used in the charge and as is meant by the statute under which the prosecution was sought to be maintained: "You are charged that by the terms 'business' and 'occupation' as used in this charge, is meant that

which engages one's time and attention or labor, or that about which a person is engaged or employed." This charge was at the time excepted to and the following special charge requested by counsel for appellant: "You are charged that before you can convict the defendant in this case you must believe from the evidence beyond a reasonable doubt that Will Scott was engaged in the business or occupation of keeping or storing spirituous, vinous or intoxicating liquors for others. And in this connection you are further charged that by the terms 'business' and 'occupation' is meant a calling, trade or vocation which one engages in for the purpose of making a living or of obtaining wealth." Long before the enactment of the Legislation under which the charge against appellant was begun, the words "occupation" and "business," as used in this and similar statutes, had received a well-defined judicial construction and definition, and it must be understood that the law made use of these terms with reference to the well-known construction placed on them both by this court and by the Supreme Court of this State. As far back as 1884, in the case of Standford v. State, 16 Texas Crim. App., 331, the word "occupation" is thus defined by Judge Willson: "Occupation as used in this statute, and as commonly understood would signify, vocation, calling, trade; the business which one principally engages in to procure a living, or obtain wealth." This case was in terms approved by Judge Simkins in the case of Love v. State, 31 Texas Crim. App., 469. A similar holding was made by this court in the case of Koenig v. State, 33 Texas Crim. Rep., 367; 26 S. W. Rep., 835, in which all the authorities both in this State and generally in the United States were fully reviewed in an elaborate opinion by Judge Hurt. The opinions of this court have received the approval of the Supreme Court in the case of State v. Austin Club, 33 S. W. Rep., 113. In that case the decision of the court in the Standford case, supra, as well as the Koenig case, are quoted and reviewed and are in substance approved by the Supreme Court as correct. In American and English Encyclopædia of Law, vol. 5, p. 72, it is said: "In its larger sense, 'business' embraces everything about which a person can be employed. But in a more ordinary and confined sense 'business' is that which occupies the time, attention, and labor of a man for the purpose of a livelihood or profit." Again, the author says: "Business is a word of large signification and demonstrates the employment or occupation in which a person is engaged in to earn a living." Lyons Thomas Hardw. Co. v. Perry Stove Mfg. Co., 86 Texas, 153. Again in vol. 21, p. 769 of this same work, occupation is thus defined: " 'Occupation' signifies the principal business of one's life, vocation, calling, trade; the business which a man follows to procure a living or obtain wealth. It has been held that the word 'occupation' refers to the vocation, profession, trade or calling in which the person is engaged for hire or for profit, and does not extend to acts and duties which are simply incidents connected with the daily life of men in any or all occupations, or to mere acts of diversion or recreation. Thus, occasional acts will not constitute an occupation."

The word, "business" is thus defined in 6 Cyclopædia of Law and Procedure, p. 259: "That which occupies the time, attention and labor of men for the purpose of a livelihood or profit; that which occupies the time, attention and labor of men for the purpose of profit or improvement." The first definition is in terms quoted from the case of Lyons Thomas Hardw. Co. v. Perry Stove Mfg Co., 86 Texas, 153. Again, it has been defined as that which one does for a livelihood. This definition is quoted in Waggener v. Haskell, 89 Texas, 435. Numerous authorities, indeed a multitude of them could be cited to the same effect, but these will be sufficient both to illustrate and support our position. As applied to the facts of this case, we think the charge of the court too restrictive, and that the special charge requested, in substance, presents a correct definition of the terms used in the statute. To say that business or occupation is that which engages one's time and attention, or labor or that about which a person is engaged or employed, might, as applied to the facts of some cases, not be subject to serious criticism, but where, as in this case, the fact that the liquor shown to have been drunk on the premises were claimed to be kept not for hire or profit, and not as a business or calling, but as a mere incident and that such keeping was casual and incidental, we can well understand how the jury might have been misled by such definition. The statute relates to those only who are engaged in the business or occupation of keeping or storing spirituous, vinous or intoxicating liquors for others. Under this charge the issue between the State and the appellant was as to whether Scott was engaged in the business or occupation of keeping or storing liquors, and while such a conclusion was fairly inferable from the facts in evidence, it became not only important but indispensable that the jury should have been given a correct definition of these terms. The court's charge in substance told them that business and occupation was: (1) whatever engages one's time and attention is his business and occupation; (2) that whatever engages his labor is his business and occupation; (3) that whatever he is engaged or employed about is his business and occupation, and this without reference to the purpose or occasion of his being so engaged or employed. The jury would under this instruction have been authorized to convict appellant although they may have believed that the liquor drank on the premises had been placed there not in pursuance of the business and occupation of storing liquors, but if it were left there only as a matter of accommodation and such act had been casual and incidental, because to some extent it would engage his time and attention to consider and respond to any visitor's request. Nor do we believe that we are authorized to sustain the conviction on the ground that under a correct instruction the jury must necessarily have found appellant guilty. Having excepted to the court's charge at the time and having requested what we believe was a correct charge, we do not think that we are called upon to speculate as to what the jury would have done if they had received, in respect to this matter, a correct instruction from the court.

There are many other questions raised in the record, most of which relate to mere matters of procedure; the alleged improper argument of counsel and matters of that sort which need not be considered or reviewed. For the error of the court above noted, the judgment is reversed and the cause remanded.

                              *Reversed and remanded.*

Brooks, Judge, absent.