MYRTLE H. WILSON v. INTER-OCEAN CASUALTY COMPANY.

(Filed 4 November, 1936.)

**1. Evidence B a—**

The burden of proof is on the party asserting the affirmative, whether plaintiff or defendant, to support the issue by the preponderance of the evidence or by its greater weight, and the burden of proof constitutes a substantial right.

**2. Trial E c—**

The failure of the court to define "the greater weight of the evidence," in its instruction correctly placing the burden of proof, will not be held for error in the absence of a special request for instructions, the definition being a subordinate feature of the charge.

**3. Trial E f—**

An asserted error in the statement of the contentions of a party must be brought to the attention of the trial court at the time in order for an exception thereto to be considered on appeal.

**4. Evidence N b—Instruction on relative weight to be given positive and negative testimony held without error.**

The charge of the court that the opportunities of witnesses (who had testified that they did not smell whiskey on the breath of the person in question) might be so frequent and favorable as to approach in weight to a positive statement; yet when the positive testimony would not conflict with the negative under any ordinary circumstances, the witnesses being equally credible, the former should preponderate, *is held* without error, it being the duty of the jury to reconcile the evidence if possible.

**5. Insurance R a—Instruction defining "intoxicated" as used in accident policy held without error on insurer's appeal.**

Insured was killed in an accident while riding as a passenger in an automobile. Insurer admitted issuance of the policy and that it was in

force at the time, but denied liability under the proviso in the policy that no liability should attach if injury should proximately result from insured's intoxication at the time, and assumed the burden of proof on its affirmative defense. The trial court instructed the jury that "intoxicated" and "drunk" were synonymous terms, and that the issue should be answered in favor of insurer if insured had drunk intoxicants to such extent as to appreciably affect and impair to any extent his mental or bodily faculties, or both. *Held:* The instruction is favorable to insurer, and will not be held for error on insurer's appeal.

**6. Appeal and Error J e—**

A new trial will not be awarded for error which is not material or prejudicial.

APPEAL by defendant from *Frizzelle, J.,* and a jury, at March Term, 1936, of PITT. No error.

This is an action brought by plaintiff against defendant to recover $2,500 on an accident insurance policy, A-8-1, 383469, in defendant's company, executed 15 December, 1933, on the life of her husband, R. C. Wilson, provided he came to his death from the effects of bodily injury caused directly by external, violent, and accidental means, and the death resulted from such injury within 30 days from the date of the injury. Plaintiff was the beneficiary under the policy. The premium had been paid.

R. C. Wilson was fatally injured in an automobile accident near Graingers Station, in Lenoir County, N. C., on 12 December, 1934, at 11:05 p.m., while riding as a passenger in an automobile, and died the next day from the injury sustained. The policy was in full force and effect, and the defendant was notified pursuant to the terms of the policy.

The defendant denied the material allegations of the complaint, and for a further answer set up the following defense: "That the defendant is informed, advised, and believes, and upon such information, advice, and belief alleges that at the time the said R. C. Wilson sustained the injury complained of, the said R. C. Wilson was intoxicated, or under the influence of or affected by alcoholic liquors and intoxicants, and that said injuries resulted directly or indirectly from intoxicants or narcotics, and while the said R. C. Wilson was violating the laws of the State of North Carolina, and such violation and intoxication was the direct cause of said injuries, and the defendant specifically pleads the general provisions, conditions, and limitations of its said policy in bar of any recovery in this action, and herein incorporates said general provisions to the same full extent as though the same were herein copied word for word, and specifically pleads in bar of any recovery in this action section 8 of the general provisions of said policy, which are as follows: 'The insurance under this policy does not cover any loss, fatal or otherwise, sustained: while intoxicated or under the influence of or

affected by, or resulting directly or indirectly from intoxicants or narcotics; while violating the law, if such violation is the direct cause of the accident; any loss contributed to or caused by any mental or bodily infirmity,' and the defendant is advised and so alleges that at the time of said accident and the injury complained of, the said R. C. Wilson was violating the terms, conditions, and provisions of said policy, and the defendant specifically pleads such violation and limitation of said policy in bar of any recovery in this action."

*The facts:* The insured, R. C. Wilson, was fatally injured in an automobile accident about 11:05 p.m., the night of 12 December, 1934, on the Kinston-Greenville Highway, at Graingers Station, while an occupant in a Chevrolet Coupe, one-seat car, the property of W. J. Hardee, and occupied by W. J. Hardee, R. C. Wilson and one Jesse Jones, driver of the car, all three in one seat. The car was being driven at a high rate of speed toward Kinston from Greenville, and failed to make a curve, left the highway and turned over several times, coming to rest on the railroad tracks. W. J. Hardee was instantly killed; R. C. Wilson, the insured, fatally injured, and Jesse Jones was only slightly injured and disappeared from the scene of the accident shortly after the first persons on the scene arrived. Jesse Jones was not available as a witness on the trial, having been killed by a hit-and-run driver a few days prior thereto. The defendant's evidence tended to show that the insured, R. C. Wilson, and W. J. Hardee on the day prior to the night of the accident were in attendance upon a hog killing on the Hardee farm, adjacent to the town of Greenville, at which there was much drinking during the day on and off at the hog killing. Wilson was drinking. In the words of defendant's witness, T. E. Pollard: "He was what I would call drinking. He was jolly good, but did not stagger. He stayed about one way all day. The last time I saw him, about three o'clock, his condition was the same." During the course of the hog killing, Mr. Wilson bet Mr. Hardee a pint of liquor on the weight of the hogs, and Wilson won the bet. Pollard testified: "I don't know whether he got the pint of liquor or not." Wilson ate no food during the day at the hog killing. On cross-examination, he testified: "There was seven men present at the hog killing. I did not see but two pints of whiskey out there. I think pretty much all seven men took a drink. All seven men took a drink out of the two pints. The hog killing started at nine o'clock and between nine o'clock and three o'clock all seven men drank two pints of whiskey. I said he was not drunk. I say he could attend to his business. He did do it. He did not seem to stagger any."

Between four and five o'clock on the afternoon prior to the night of the accident, Mr. Wilson and Mr. Hardee were found in Mr. Hardee's Chevrolet coupe on a dirt road about three miles southeast of Greenville,

parked on the left side of the road, stalled in a ditch, with lights on the car and the door of the car open into the road, blocking the road, by the witness, Arthur Denton, who was accompanied by one Jesse Jones. Mr. Wilson came out of a house and asked Denton to help him get into town, stating he, Wilson, could not drive the car and that Hardee was too drunk to drive. Jesse Jones, who was riding with Denton, offered to drive the car for Wilson and Hardee and joined Wilson and Hardee and drove the car in a direction away from Greenville. This was around five o'clock p.m., preceding the night of the accident. At about 11:05 p.m., the coupe (single seat) being driven in the direction of Kinston on the Greenville-Kinston Highway, occupied by Wilson, the insured, Hardee, and Jones, at a high rate of speed, failed to make a curve at the railroad crossing at Graingers Station, left the highway, ran head-on into an embankment, and turned over, killing Hardee instantly and fatally injuring Wilson. Jesse Jones was only slightly injured and able to leave the scene of the accident immediately after its occurrence. Wilson was thrown six or eight feet from where the car finally rested. A pint bottle of whiskey, half full, was found on the scene. Wilson was carried to the Parrott Memorial Hospital in Kinston at approximately twelve o'clock. He had been drinking and there was a strong odor of alcohol upon his breath. He was unconscious from the accident and died the following day. Jack Taylor testified: "I detected the odor of alcohol or whiskey upon him. It was as strong as I ever detected, I think. It was my opinion that night he was under the influence of intoxicating liquor."

The plaintiff contended that the insured, Wilson, was not intoxicated or under the influence or effects of intoxicating liquor, or granting that he was drinking and intoxicated and affected by liquor during the day preceding the night of the accident, that he had fully recovered therefrom. Plaintiff offered evidence of witnesses who saw and talked to the insured between the hours of three and eight-thirty o'clock p.m., on the day of the accident, and none of them detected the odor of alcohol about the deceased, and all of whom declared that so far as they could tell, the insured was sober. Several witnesses were introduced who went to the scene of the wreck, all of whom testified that they came in close contact with the insured, handled him, and put him in the automobile, and that they did not detect on him the odor of alcohol, and that so far as they could tell, insured had not been drinking. After the insured had been taken to the hospital at Kinston, Dr. M. T. Frizzelle, a reputable physician of Ayden and brother-in-law to W. J. Hardee, who was killed in the same accident, Jack Spain, a lawyer of Greenville and son-in-law of W. J. Hardee, and S. G. Wilkerson, an undertaker of Greenville, went to the hospital where insured had been carried. Dr. Frizzelle testified

in part: "I bent down close to his face for the purpose of smelling his breath, in about six inches, something like that. I didn't detect the odor of whiskey on his breath when I did that." Jack Spain testified, in part: "I got right over him, within two or three inches of him. He was breathing the full force of his breath right out of his mouth. I did not smell any odor of whiskey—and I can smell it." S. G. Wilkerson testified, in part: "His mouth was open. I got within two or three inches of his mouth. When I did that, I didn't detect the odor of intoxicating liquor. I know the odor of whiskey. I can detect it on a man who has been drinking it. . . . I did not detect any odor of whiskey at all on his breath." Dr. Frizzelle and Mr. Spain likewise testified that they made a searching examination of the wrecked car and that they found no liquor in it and nothing to indicate that any liquor had been on the car. There was no contention that the insured was driving the car at the time he received his fatal injuries. In fact, it was in evidence that the insured had never driven an automobile.

In the record is the following: "Upon conclusion of reading the pleadings, the defendant having admitted the execution of the policy, the death of the insured, and that the policy was in full force and effect at the time of the death of the insured, the defendant voluntarily assumed the burden of the issue."

The issue submitted to the jury and their answer thereto were as follows: "Was the deceased, R. C. Wilson, intoxicated or under the influence of or affected by intoxicants at the time of the fatal injury, as alleged in the answer? Answer: 'No.'"

The court below rendered judgment on the verdict for plaintiff. The defendant made numerous exceptions and assignments of error and appealed to the Supreme Court.

*Blount & James and Albion Dunn for plaintiff.*
*Lewis G. Cooper for defendant.*

CLARKSON, J. Section 8 of the general provisions of the policy in controversy reads as follows: "The insurance under this policy does not cover any loss, fatal or otherwise, sustained: while intoxicated or under the influence of or affected by, or resulting directly or indirectly from intoxicants or narcotics; while violating the law; if such violation is the direct cause of the accident; any loss contributed to or caused by any mental or bodily infirmity."

There was only one issue submitted to the jury in the court below: "Was the deceased, R. C. Wilson, intoxicated or under the influence of or affected by intoxicants at the time of the fatal injury, as alleged in the answer?" The answer of the jury was "No."

There was no exception by defendant to the issue submitted, nor was any other issue tendered by it. *Grier v. Weldon,* 205 N. C., 575. The defendant voluntarily assumed the burden of the issue.

The numerous exceptions and assignments of error made by defendant cannot be sustained. They are as follows: The court below charged the jury in different portions of the charge: (1) "The burden, therefore, of sustaining that issue is upon the defendant upon evidence which shall satisfy you by its greater weight that its allegations and contentions are true and correct." (2) "If the defendant has satisfied you from the evidence, and by its greater weight, that the deceased, R. C. Wilson, was intoxicated or under the influence of, or affected by intoxicants at the time of the fatal injury, as alleged in the answer, it will be your duty to answer that issue 'Yes.' If the defendant has failed to satisfy you of that, or of those facts, those contentions, upon the evidence, or by its greater weight, then it will be your duty to answer the issue 'No.'" (3) "Now, gentlemen, upon that testimony the plaintiff contends that you ought to be satisfied that Mr. Wilson at the time of the fatal injury was neither intoxicated nor under the influence of, nor affected by alcoholics or narcotics. She contends that you, gentlemen, remembering that the burden of the issue is upon the defendant to satisfy you upon the evidence, and by its greater weight, if its contentions are true, they not only failed to sustain and carry the burden of the issue upon it, but that she has offered evidence, the greater weight of which, as she contends, while the burden is not resting upon her to satisfy you by its greater weight, but she contends that she has offered evidence which by its greater weight should satisfy you that her contentions about it are correct, and that, therefore, you should answer that issue 'No.'"

The defendant contended that in the first two above excerpts from the charge it was the duty of the court below in the charge to the jury to have defined what constituted the greater weight of the evidence, and in failing to do so the court committed error. C. S., 564. We cannot so hold.

The burden of proof is on the party who substantially asserts the affirmative of the issue, whether he be nominally plaintiff or defendant. The burden of proof is on the party holding the affirmative. It constitutes a substantial right. *Hunt v. Eure,* 189 N. C., 482; *Boone v. Collins,* 202 N. C., 12; *Stein v. Levins,* 205 N. C., 302 (306). A preponderance of the evidence, or by the greater weight, is all that is required in a civil action. If the defendant desired more elaborate instructions on a subordinate feature, it should have submitted an appropriate prayer. *S. v. Gore,* 207 N. C., 618; *S. v. Anderson,* 208 N. C., 771 (788).

The third portion of the charge, as set forth above, is a contention, and if not accurate the defendant should have called the matter to the attention of the court at the time.   It is too late after verdict.   *Albritton v. Albritton, ante,* 111 (115).

The court below charged the jury as follows: "For instance, the force of negative testimony must manifestly depend upon the opportunities of observation afforded to the witness.   Those opportunities might be so favorable and frequent as to approach in weight to a positive statement; *yet we take it when the positive testimony would not conflict with the negative under any ordinary circumstances, the witness being equally creditable, the former should preponderate.*"

The above, which is in italics in defendant's brief, is taken *verbatim* from *Henderson v. Crouse,* 52 N. C., 623 (625-6): "Yet we take it when the positive is in conflict with the negative, under any ordinary circumstances, the witnesses being equally credible, the former should preponderate." *S. v. Murray,* 139 N. C., 540 (542).   In fact, it is well settled that it is the duty of the jury to reconcile the evidence, if possible. We see no error in this contention of defendant.

The court below charged the jury as follows: "The court instructs you that, under the law, 'intoxicated' is synonymous, or practically so, with the word 'drunk'—that they mean practically, in ordinary usage, the same thing—an intoxicated person is a drunken person—a drunken man is an intoxicated man.   And that means, intoxicated means, in law, that the subject must have drunk of alcoholics to such an extent as to appreciably affect and impair his mental or bodily faculties, or both.   Now, the court instructs you further, that to be under the influence or affected by liquor means, that the subject must have drunk a sufficient quantity to influence or affect, however slightly, his body and his mind, his mental and physical faculties.   Not that they must be appreciably impaired, not that his emotions or passions must be stimulated or excited, or aroused, and the judgment impaired, but it does mean that to be under the influence or affected by it, must to some extent, at least, affect him.   He must to some extent, at least, feel it to be affected by it.   If the defendant has satisfied you from the evidence, and by its greater weight, that the deceased, R. C. Wilson, was intoxicated or under the influence of, or affected by, intoxicants at the time of the fatal injury, as alleged in the answer, it will be your duty to answer that issue 'Yes.'   If the defendant has failed to satisfy you of that, or of those facts, those contentions, upon the evidence or by its greater weight, then it will be your duty to answer the issue 'No.'"

The words "intoxicated" and "drunk" are commonly regarded as synonymous. *Bragg v. Commonwealth,* 133 Va., 645; *Mutual Life Ins. Co. v. Johnson,* 64 Okla., 222; Black's Law Dictionary (3d Ed.), p. 624,

citing a wealth of authorities, defines "drunk" as follows: "A person is 'drunk' when he is so far under the influence of liquor that his passions are visibly excited or his judgment impaired, or when his brain is so far affected by potations of liquor that his intelligence, sense-perceptions, judgment, continuity of thought or of ideas, speech, and coördination of volition with muscular action (or some of these faculties or processes) are impaired or not under normal control." We see no error in the charge, taking same as a whole, defining the condition a party must be in to avoid the policy. *S. v. Myrick*, 203 N. C., 8.

Under the terms of the policy the charge is favorable to defendant: "Must have drunk a sufficient quantity to influence or affect, however slightly, his body and his mind, his mental and physical faculties."

In Couch Cyc. of Ins. Law, Vol. 6, p. 4553, part sec. 1245, is the following: "And, broadly speaking, the words 'intoxicated,' 'intoxicants,' and 'narcotics,' as used in provisions in accident policies, excluding liability for injury or death while intoxicated or under the influence of intoxicants or narcotics, mean that the insured has used liquors or drugs to such an extent as to disturb the action of his mental or physical faculties, and that his sense of responsibility is substantially or materially impaired."

There are many exceptions and assignments of error as to the admission of evidence and the unnecessary examination of witnesses by the court. We have examined each with care, and we cannot find any error, if error not prejudicial. In fact, some were cured by subsequent evidence to the same effect, at least—the evidence had little, if any, probative value.

We think the evidence was a matter for the jury. They have decided in favor of plaintiff. On the record there is no prejudicial or reversible error.

No error.